Samuel AVILA and Nilsa Avila d/b/a
Mundo Latino, Appellants

v.

The STATE of Texas, Appellee.

No. 12–06–00120–CV.

Court of Appeals of Texas,
Tyler.

March 31, 2008.

Bill Rosenstein, for Appellant.

Emily B. Robinson, Mary Taylor Henderson, for Appellee.

Panel consisted of GRIFFITH, J., and HOYLE, J.

## *OPINION*

BRIAN HOYLE, Justice.

Samuel Avila and Nilsa Avila, doing business as Mundo Latino, appeal from a judgment and permanent injunction entered after a jury trial in a case brought by the State of Texas pursuant to the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA). In nine issues, the Avilas complain of the sufficiency of the evidence, rulings on the admissibility of certain evidence, charge error, and the breadth of the injunction. Because the injunction is overbroad, we modify the permanent injunction to delete one paragraph. As modified, we affirm the trial court's judgment and permanent injunction.

### BACKGROUND

Samuel Avila and his wife, Nilsa, operated a business called Mundo Latino in Tyler, Texas. They assisted Spanish speaking individuals with immigration matters and federal income taxes. They also took passport and immigration photos, translated documents, and at a time when permitted by law, took fingerprints.

The Office of the Attorney General of the State of Texas filed a petition against the Avilas alleging they violated the DTPA. The State alleged that the Avilas counseled consumers on immigration matters without legal authorization or qualification. In the process, the State alleged, the Avilas engaged in false, misleading, and deceptive acts and practices because they do not possess the certification or qualifications necessary to counsel people regarding their rights under United States immigration laws or to represent them in immigration matters. The State further alleged that the Avilas violated the Texas Government Code by stating or implying that Samuel Avila, a notary public, is an attorney licensed to practice law and by soliciting or accepting compensation for preparing documents for or otherwise representing the interests of another in proceedings relating to immigration to the United States.

The trial court entered a temporary restraining order and asset freeze and, after a hearing, a temporary agreed injunction. The case was tried before a jury that found Samuel and Nilsa Avila interviewed consumers or filled out immigration forms for consumers or advised consumers as to whether they were qualified to file petitions and applications, or determined whether immigration forms should be filed for consumers, when neither was licensed to practice law; accepted compensation to prepare documents for and to represent consumers regarding immigration to the United States, United States citizenship, or related matters when not licensed to practice law, not law students, or working for a nonprofit organization accredited by the Board of Immigration Appeals; engaged in false, misleading, or deceptive acts or practices in the conduct of trade or commerce; and that both, while notary publics, solicited or accepted compensation to prepare documents for or otherwise represent the interest of another in a proceeding relating to immigration to the United States, United States citizenship, or related maters. In accordance with the jury's findings, the trial court ordered Samuel Avila and Nilsa Avila each to pay $60,000.00 for restitution and $100,000.00 for penalties. Together they are to pay $28,500.00 in attorneys' fees. The trial court permanently enjoined the Avilas from engaging in specified acts regarding their business and other acts that constitute the provision of immigration services until they comply with federal law to become authorized to provide such services.

### ADMISSIBILITY OF EVIDENCE

■ The Avilas contend, in their first issue, that the trial court erred in admitting State's Exhibit 3 because it is hearsay and the State did not lay the proper predicate under the business records exception to the hearsay rule. Further, they argue that, although Exhibit 3 is a summary of business records, the State did not offer proof that the actual business records had been made available to them for any period of time to afford inspection, and therefore the exhibit was not admissible for failure to comply with Rule of Evidence 1006.

■ The admission and exclusion of evidence is committed to the trial court's sound discretion. *Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000). On appeal, we review a trial court's evidentiary decisions by an abuse of discretion standard. *Id.* at 527–28. The determination of abuse of discretion turns on whether the lower court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). Hearsay statements are generally inadmissible, but there are a number of exceptions to this general rule. *See* TEX.R. EVID. 802, 803. One such exception is the business records exception, which allows for the admission of records of regularly conducted business activities. TEX.R. EVID. 803(6). Records that would otherwise be hearsay are admissible under Rule 803(6) if the following four requirements are met: 1) the records were kept in the course of a regularly conducted business activity, 2) it was the regular practice of that business activity to make the records, 3) the records were made at or near the time of the event being recorded, and 4) the person making the records or submitting the information had personal knowledge of the events being recorded. *West v. State,* 124 S.W.3d 732, 735 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd).

Dennis Janda, an intelligence research specialist with the Citizenship and Immigration Services Branch of the United States Department of Homeland Security, testified for the State. He is a custodian of the records for Citizenship and Immi-

gration Services. Janda explained that a G–28 is a form submitted by or on behalf of individuals seeking immigration benefits. All information on every G–28 form submitted is entered into a computer within twenty-four hours of its receipt by his department. Janda testified that State's Exhibit 3 is a summary of the more than 2,180 G–28 forms filed by Samuel Avila. He testified that Exhibit 3 is a business record made in the ordinary course of business at Citizenship and Immigration Services, made at or near the time his department received the G–28 forms, by a person with knowledge of the events being recorded.

Although Exhibit 3 is a summary of underlying business records, it is itself a business record entitled to be treated as other business records, making Rule 1006 inapplicable here. *See McAllen State Bank v. Linbeck Constr. Corp.*, 695 S.W.2d 10, 16 (Tex.App.-Corpus Christi 1985, writ ref'd n.r.e.). Rule 803(6) does not require any additional predicate to be laid for the admission of computer generated records. *Huff v. State*, 897 S.W.2d 829, 840 n. 10 (Tex.App.-Dallas 1995, pet. ref'd). Janda's testimony established the necessary predicate required by Rule 803(6). We hold that Exhibit 3 met the business records exception to the hearsay rule and the trial court did not abuse its discretion in admitting it. We overrule the Avilas' first issue.

In their second issue, the Avilas contend the trial court erred when it prevented them from putting on any evidence to assist the jury in assessing damages or mitigating damages and civil penalties. Asserting that the State's position created a form of strict liability, they argue that the jury should have heard evidence about whether any consumer was harmed or suffered any damage or whether the Avilas actually committed deceptive trade practices as defined in the charge.

First, the Avilas contend the trial court erred when it refused to admit Defendants' Exhibit 5, a document signed by Maribel Tavera, a previous client of the Avilas who testified for the State. They argue that the exhibit was admissible for purposes of impeachment. However, the record shows that the trial court's refusal to let the Avilas offer Exhibit 5 was a sanction for their failure to produce the document in discovery. Rule of Civil Procedure 215.2(b)(4) authorizes the trial court to forbid a party from introducing designated matters in evidence. Tex.R. Civ. P. 215.2(b)(4). Therefore, the trial court was within its discretion in refusing to admit Defendants' Exhibit 5.

Next, the Avilas assert that the trial court erred in refusing to allow Tavera to answer when asked if she obtained her residency status. The court sustained the State's relevancy objection. The Avilas argue that the answer is admissible to show that, since they helped Tavera obtain her citizenship, the violation, if any, is not serious. The State responds by asserting that the focus under the DTPA is the defendant's conduct, not the result of his conduct. The State argues that the trier of fact is to consider the gravity of the prohibited act to determine the seriousness of the violation, not the gravity of the harm done by engaging in the act.

Section 17.47(g) of the DTPA provides that, in determining the amount of penalty to impose, the trier of fact is to consider the seriousness of the violation, including the nature, circumstances, extent, and gravity of the prohibited act. Tex. Bus. & Com.Code Ann. § 17.47(g) (Vernon Supp.2007). If the meaning of statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words and terms. *Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 89 (Tex.2001). The

plain language of the statute lists factors to be considered in assessing a fine. The legislature could have included results of the defendant's actions in the list had it so chosen. We agree with the trial court's determination that testimony about the results of the Avilas' actions is irrelevant under the DTPA and therefore inadmissible.

Finally, in issue two, the Avilas assert that the trial court erred by not allowing certain testimony of Fernando Dubove. The State objected asserting that the testimony violated the motion in limine that prohibited evidence of the results of the Avilas' actions, that it is hearsay, is not relevant, and that the evidence is cumulative.

The Avilas offered a bill of exception to make a record of the testimony they wanted before the jury. In the bill, Dubove explained that, in his opinion, the violations were serious because Avila "did a lot of them." He said the gravity of the prohibited act is dependent upon the consequences. He stated that he had reviewed the cases done by the Avilas and had not seen one "where someone was lied to by Mr. Avila because he misrepresented he was an attorney or an accredited rep." or where applications were fraudulently prepared, or where applications were filed prematurely resulting in the client being deported. He testified that Avila has not caused any confusion or misunderstanding as to certification of his services. Avila has been doing this for a long time and people hear about him through friends and relatives who have been satisfied with his work. In his opinion, Avila never told anyone that he was a lawyer or an accredited representative. He stated that Avila's work is competent and Avila did not pretend to be an accredited representative. Dubove explained that while Avila is not authorized to perform immigration services, he is qualified and does good work.

In Dubove's opinion, there was no harm or gravity to Avila's performing the services he did without working for a nonprofit organization.

As explained above, any testimony going to the gravity of the harm done by engaging in the prohibited act is irrelevant and inadmissible. Testimony about what clients thought and what Avila's case records indicate is inadmissible hearsay.

Furthermore, on direct examination before the jury, Dubove covered the same subject matter. He explained that he hired Avila to work for him because the people who sought out Avila went to him for a reason. They trusted him and relied on his work product. The court sustained the State's hearsay objection as to "the last portion of the answer" but stated that the "first portion will stay in the record." However, the State did not ask for any portion of the answer to be stricken or for the jury to be instructed to disregard. Dubove was asked his opinion of the seriousness of Avila's violations and the gravity of his prohibited acts or practices. Dubove explained that he had no doubt that Avila had engaged in the unauthorized practice of law but said he had not found any harm. The State objected, and the court sustained "the objection to the last part of his answer" but explained that "the first part still stands." Again, there was no motion to strike or request for a jury instruction. Dubove explained that serious consequences may occur when applications are inappropriately filed or fraudulently prepared. He said he had not seen anything like that in Avila's cases. The State's objection was sustained as to the "last part" of Dubove's statements. Again, there was no motion to strike or request for a jury instruction. Counsel for Avila asked, "So, Mr. Dubove, would it be your opinion that the seriousness of the violation and the gravity of the prohibited act

or practice depends upon the results of the acts or practices, not just that they were performed?" Dubove's response was, "Exactly." The State objected and a bench conference ensued. After a discussion of the parameters of acceptable questioning, the court sustained the objection and allowed counsel to reask the question. Dubove's previous answer was not stricken and no jury instruction was given. Dubove then answered "no" when asked if he believed that the act of an unauthorized person performing immigration services is in itself serious and grave.

The testimony in the bill of exception included hearsay, irrelevant, and cumulative evidence. Therefore, the trial court did not abuse its discretion in excluding the testimony in the bill of exception. *See Allen,* 15 S.W.3d at 527–28. We overrule the Avilas' second issue.

### CHARGE ERROR

■ In their fourth issue, the Avilas assert that the trial court erred in submitting Questions 1 and 2 to the jury because they were immaterial and constituted a comment on the weight of the evidence. They argue that these questions, which concern the unlawful practice of law, implied that such activities were deceptive trade practices although such acts have not been declared unlawful by the DTPA. They further complain that the jury was instructed to not answer Questions 3 and 4 unless they answered in the affirmative to either Question 1 or 2. Because Questions 3 and 4 inquired as to whether the Avilas engaged in practices declared unlawful under the DTPA, they argue, the charge had the effect of telling the jury that the acts described in Questions 1 and 2 were false, misleading, or deceptive acts or practices in the conduct of trade or commerce and the only acts of the Avilas that were such.

A party must make a specific objection to the submission of a jury question be-

lieved to be improper if that party wishes to preserve error for appellate review. *See* TEX.R. CIV. P. 274. The Avilas objected to Questions 1 and 2 complaining that they are duplicates and that, because there is no evidence that they performed the acts alleged in those questions, the evidence does not support submission of Questions 1 and 2. Their complaint on appeal does not comport with the objections to Questions 1 and 2 made at trial. Therefore, their complaint on appeal has been waived. *See Gutierrez v. County of Zapata,* 951 S.W.2d 831, 844 (Tex.App.-San Antonio 1997, no writ). We overrule the Avilas' fourth issue.

### SUFFICIENCY OF THE EVIDENCE

■ In their third issue, the Avilas contend there is no evidence that Nilsa committed any act of engaging in false, misleading, or deceptive acts or practices in the conduct of trade or commerce. They argue that the State relied on the alleged partnership with her husband to support the judgment against Nilsa and that it offered no evidence that Nilsa, personally or individually, performed any unlawful acts or practices. They argue that the only evidence of a partnership was the assumed name certificate for Mundo Latino, which had both Samuel and Nilsa's names on it and which they contend is insufficient to prove the existence of a partnership.

In their fifth issue, the Avilas assert the trial court erred in submitting Question 3 to the jury and entering judgment on the jury's answer to Question 3 because there was no evidence that either of them engaged in any false, misleading, or deceptive act or practice in the conduct of trade or commerce as defined in Question 3. In that question, the jurors were advised that "false, misleading, or deceptive act or practice" meant a number of different acts,

including an act or series of acts that have the tendency to deceive an average ordinary citizen; causing confusion or misunderstanding as to affiliation, association, or certification by another; representing that a person has a status, affiliation or connection which he does not have; representing that services have approval characteristics, uses, or benefits which they do not have; or representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.

In their sixth issue, the Avilas assert that there is no evidence that Samuel or Nilsa Avila, as notary publics, solicited or accepted compensation to prepare documents for or otherwise represented the interest of another in a proceeding relating to immigration to the United States, United States citizenship, or related matters. They argue that the State did not prove what dates they were commissioned notaries and there is no evidence that any solicitation or acceptance of compensation, preparation, or representation was done while Samuel Avila was a notary public.

### Evidence Presented

In his deposition taken shortly before trial, Samuel Avila said he began Mundo Latino in 1998 or 1999. He has also called his business East Texas Immigration Counseling Services. He admitted that he is not an attorney and his business is not a nonprofit organization. He stated that he advertised his income tax service only once and does not advertise immigration services. Avila explained that he accepted compensation to fill out immigration forms, but denied giving advice. He charged $150.00, $300.00, or $750.00 depending on which forms were necessary. He said he had provided immigration services for over a thousand people.

Richard Fischer, an attorney who practices immigration law, explained that in order to qualify to do immigration services, an individual must either be a licensed attorney or be an accredited representative, authorized by the Board of Immigration Appeals. Accredited representatives can only be employed by nonprofit organizations. As an immigration attorney, he interviews clients and advises them about what must be done to "get legal." He then picks out the appropriate forms and prepares them. He explained that "problem/forms/result" is the heart of immigration law practice. Fischer opined that Samuel Avila is engaged in the same kind of business that he is, and Avila is making mistakes.

Fischer testified that between 200 and 1,000 people have come to him who were previously provided services by Samuel Avila. He stated that, in addition to filing fees, Avila charged $600.00 for an application for permanent residence, $150.00 or $200.00 for an application for naturalization, and $100.00 or $150.00 for the form that is filed to get a new copy of an old document. The State offered into evidence a copy of a settlement agreement between Blanca and David Perez and Samuel Avila, dated August 17, 2001. Fischer explained that the Perezes came to him after Avila had filed forms on their behalf in which he had failed to disclose a prior marriage of Blanca. The parties agreed to a monetary settlement. Additionally, Avila acknowledged that he is not authorized to receive money for advising, filling out forms, or representing people in immigration matters and promised not to give advice, fill out forms, or represent people in immigration matters "anymore" unless and until he is lawfully authorized to do so by the Board of Immigration Appeals.

Dennis Janda, the intelligence research specialist with Citizenship and Immigration Services, explained that the G–28 form, which is entitled "Notice of Entry of Appearance as Attorney or Representa-

tive," is submitted by or on behalf of individuals seeking immigration benefits. He testified that Samuel Avila filed in excess of 2,180 G–28s under several different business names and different titles for himself including "Counselor at Law" and "Law Offices of Samuel Avila." He explained that the form indicates to his agency that the individual is represented by a law firm or authorized individual and that the person filing it is a licensed attorney or a nonprofit organization. Janda testified that neither Mundo Latino nor East Texas Immigration Counseling Services, names under which the Avilas have done business, are nonprofit organizations recognized by the Board of Immigration Appeals. The record contains seven G–28s filed by Samuel Avila with dates ranging from January 1999 to February 2004.

On four consecutive Saturday mornings in early 2005, Samuel Avila participated via telephone in a radio program aimed at the local Hispanic community. The State presented the transcripts of these programs, which originally aired in Spanish, as well as the English translations.[1] During the course of the programs, Avila told the audience that it would be best if people with criminal records did not apply because they would be subject to deportation. He discussed various issues including the importance of becoming a citizen, the requirements for becoming a citizen, and dual citizenship. He also gave advice to Salvadorans who needed to renew their temporary status to "legally stabilize" themselves. He urged his clients to come back so he could help them fill out the applications. He also explained that to get a work permit, they needed to fill out a form I–765. He explained that "law 245 I" allows applicants who entered the United States illegally to pay a penalty and receive a visa in the local immigration office where they live. He went on to explain in

further detail how some of the immigration laws work. Avila also explained, for those who do not have a Social Security number, how to obtain a tax identification number. He explained that people can get a tax identification number to fill out their income tax and the Internal Revenue Service cannot give the tax identification number to "immigration" to look for illegals. He stated that he has been doing immigration and income tax work in East Texas since 1987. He said "we" are here to serve the Hispanic community by answering any questions they might have regarding income tax and with relation to immigration.

Research by Amy Russom, an investigator for the Attorney General, revealed that neither the Avilas nor Mundo Latino are accredited by the Board of Immigration Appeals. She did the research on March 24, 2005 and December 2, 2005. She also determined that neither Samuel Avila nor Nilsa Avila is licensed to practice law in the State of Texas, but both were, at the time of trial, commissioned notaries in Texas. Russom testified that the Attorney General's office had received seven complaints against the Avilas. In the course of its investigation, the Attorney General's office sent a civil investigative demand to the Avilas. In response, on June 22, 2004, Samuel Avila wrote to the staff of the Attorney General's office explaining that his work is strictly clerical for people who are not capable of filing their own income tax or immigration forms. He said he is a notary "but only for the purpose for the convenience to Notarized documents that are required to be Notarized." He said he is not an attorney and Mundo Latino is not a nonprofit agency.

The record contains a copy of a document entitled "Assumed Name Records Certificate of Ownership for Unincorporat-

---

1. The appellate record contains the English      translation for only three of the programs.

ed Business or Profession." The business named is Mundo Latino and Samuel Avila and Nilsa Avila are named as the owners of the business. Both of them signed the document and it was filed in the Smith County clerk's office on March 28, 2000.

Portions of the deposition testimony of Fernando Dubove, the Dallas immigration lawyer, were read to the jury. He explained that he first met Samuel Avila at an immigration training session in 1997 or 1998. Avila recently called him to get help with Mundo Latino's cases. In response, Dubove set up a satellite office in Tyler. Dubove explained that, if you do not have a law license, the only way to provide immigration services is to work for an accredited agency and become an accredited representative. It has to be a nonprofit and you have to get accredited by the Board of Immigration Appeals. The only people who should be filling out G–28s are attorneys and people who work under an accredited representative or an accredited agency. He stated that Samuel and Nilsa Avila are not qualified to file a G–28. Dubove reviewed the files that were transferred to him and saw that the Avilas filled out applications and signed G–28s. He explained that the Avilas have called themselves immigration consultants on documents they filed, which is a nebulous title that does not mean anything. It does not fall under any of the legal exceptions that would allow someone to do immigration law. While they can call themselves consultants, they are not allowed to fill out forms or give legal opinions. Dubove concluded that Samuel and Nilsa Avila were engaged in the unauthorized practice of law.

The State called Samuel Avila to testify. He admitted helping thirty family members and some people at church whom he did not charge. He said that no one he had helped had complained to him and as far as he knew they got their visas and kept sending him clients. Plaintiff's Exhibit 16 is a computer printout produced by Avila entitled "Clients Priority List." He admitted that he got the list off his computer but denied that the 1,934 people named were his clients. He said he put the names in his system, but did not charge for doing so. He said he put the names in his system so those people could call him and ask "if the bulletin visa was current." He denied contacting immigration for those applicants.

Plaintiff's Exhibit 17 is a letter, the body of which is written in Spanish. At the top of the letter are the words "Immigration Counseling Services of East Texas." [2] It is signed by Samuel Avila. The words "Counselor at Law," in English, appear below the signature line. From the witness stand at trial, Samuel Avila admitted it looked like his signature, but said that did not mean he wrote the letter. He said the signature could have been forged and refused to admit that he wrote the letter. On cross examination, he said he did not know where the document came from and he contested its validity.

Plaintiff's Exhibit 18 is a letter to the "interviewing immigration officer or border patrol agent of the United States." It is on Immigration Counseling Service of East Texas letterhead, dated March 21, 1998. The body of the letter contains the following statements:

> we [sic] represent the above captioned person in Immigration proceedings under applicable U.S. laws. he/she [sic] should submit to an interview or make a Question and Answer Statement to an Immigration Officer outside of my pres-

---

**2.** This business is sometimes referred to in the record, and therefore in this opinion, as "Immigration Counseling Service of East Texas."

ence. However, in no way should this authorization be construed as allowing this client to execute a request for voluntary departure under safeguards without contacting this office. This office does not otherwise acquiesce in any way waiver of right to counsel made by a detained client who has not first contacted our office.

The letter is signed by Samuel Avila. The title "Immigration Paralegal" appears under the signature.

Plaintiff's Exhibit 19 is a letter on Mundo Latino letterhead, dated May 29, 2000. The text of the letter is identical to Exhibit 18. It is signed by Samuel Avila, but there is no title beneath the name. Plaintiff's Exhibit 20 is a letter on East Texas Immigration Counseling Service letterhead, dated August 27, 1999. Again, the text of the letter is the same as the others. It is signed by Samuel Avila with the title "Immigration Counselor" below the signature.

On cross examination, Avila explained that a priority list is produced once a month by the federal government and it tells the applicants whether their visas are available. The list is available on the internet and by calling the office of Immigration and Naturalization Service. He explained that 80% of Mundo Latino's income is from doing income taxes. He rephrased to say that 90% of his income is from things other than filling out immigration forms. They also take passport and immigration photos and translate documents. He said that if a client wants to file an I–130, he reads the instructions to them. He does not give them legal advice as to what they ought to answer. Since April 16, 2005, he has been employed by Fernando Dubove as office manager in Dubove's Tyler office. Dubove sees the majority of the people Avila assisted in the past. Avila denied telling anyone he was an attorney.

Maribel Tavera testified, explaining that she hired the Avilas to help arrange for a visa or residency for immigration. Samuel Avila told her he was a lawyer and Nilsa Avila assisted him. She has been to their place of business about seven times and Nilsa assisted each time. Samuel Avila had assisted her father with immigration services. She saw her father pay the Avilas and he paid a different amount every time he went. She hired the Avilas to help her with immigration services because they had already helped many of her friends and relatives. She explained that immigration services included the attorney's help in filling out applications and other documents for residency, citizenship, and work permits, and getting photos for the applications. The first time she went to the Avilas' office was to hire them to get her residency status. They told her to first apply for the permit, because it would arrive much quicker, and then she could apply for residency. She said they filled out the forms for her. The last time she went to their office was to get copies of her paperwork. During that visit, Samuel Avila threatened to countersue her for testifying against him in court.

On cross examination, Tavera said that, although she might have signed a document stating that she understood he was not an attorney, Samuel Avila told her he was an immigration attorney. She did not remember such a document. Additionally, he had business cards that said he was an immigration attorney. She testified that Samuel Avila prepared the documents and told her where to send them.

On redirect, Tavera said Samuel Avila put documents in front of her and told her to sign. She did because she trusted him. But if she had known the Avilas were not certified or licensed to provide immigration services, she would not have hired them.

Tavera testified that Samuel Avila translated a document from Spanish, took photographs, and prepared a biographical document, one income tax return, the application for the permit, and the application for residency. Samuel Avila selected the immigration documents to be filled out but sometimes she filled out forms herself. She paid a total of $2,000.00, half of which was for immigration services for her. However, Avila would not give her a receipt. She paid the government filing fees with money orders, but paid the Avilas with cash.

Fernando Dubove testified for the defense. He explained that, to be authorized to practice immigration law, one must be a licensed attorney or a representative accredited by the Board of Immigration Appeals and work for a nonprofit. He met Samuel Avila eight or nine years ago and hired him in March 2005 to do immigration law. Dubove testified that Avila committed the unauthorized practice of law before he worked for Dubove. In his opinion, if someone was hurt because of Avila's actions, it could be a serious mistake, but he had not found any harm. Dubove explained that just not being authorized in itself is not serious and grave; seriousness and gravity of violations depends on the results.

### Applicable Law

If an appellant is attacking the legal sufficiency of an adverse finding on an issue on which he did not have the burden of proof, the appellant must demonstrate on appeal that there is no evidence to support the adverse finding. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983). The reviewing court views the evidence in the light most favorable to the verdict, indulging every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.2005). The reviewing court must credit evidence that supports the verdict if a reasonable

fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id.* at 827. We must determine whether the evidence at trial would enable a reasonable and fair minded person to find the facts at issue. *Id.* If more than a scintilla of evidence exists to support the finding, the legal sufficiency challenge fails. *See Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex.1998). The fact finder is the sole judge of the credibility of the witnesses and the weight to give their testimony. *City of Keller*, 168 S.W.3d at 819.

The Supreme Court of Texas has held that providing immigration services in the absence of a law license constitutes the unauthorized practice of law. *Unauthorized Practice Comm. v. Cortez*, 692 S.W.2d 47, 50–51 (Tex.1985). State law provides that a notary public cannot state or imply that he is an attorney licensed to practice law in this state. TEX. GOV'T CODE ANN. § 406.017(a)(1) (Vernon 2005). Further, notary publics are prohibited from soliciting or accepting compensation for preparing documents or otherwise representing the interests of another in any judicial or administrative proceeding, including immigration proceedings. TEX. GOV'T CODE ANN. § 406.017(a)(2) (Vernon 2005). Failure to comply with Section 406.017 is a deceptive trade practice actionable under the DTPA. TEX. GOV'T CODE ANN. § 406.017(f) (Vernon 2005). Further, the unauthorized practice of law can be a deceptive trade practice. *See Thomas v. State*, 226 S.W.3d 697, 703–04 (Tex.App.-Corpus Christi 2007, pet. dism'd); *Francorp, Inc. v. Siebert*, 211 F.Supp.2d 1051, 1054 (N.D.Ill.2002); *In re Samuels*, 176 B.R. 616, 626 (Bankr.M.D.Fla.1994).

### Discussion

The State presented a copy of the assumed name certificate filed by the Avilas in the Smith County clerk's office. This

certificate, which names Samuel Avila and Nilsa Avila as owners of Mundo Latino, is presumptive evidence of the facts contained therein. Tex. Bus. & Com.Code Ann. § 36.15 (Vernon 2002) (*repealed by* Act of May 15, 2007, 80th Leg., R.S., ch. 885, § 2.47(a)(1), 2007 Tex. Gen. Laws 1908, 2085, effective April 1, 2009).

Samuel Avila accepted compensation to fill out immigration forms and provided immigration services to over a thousand people. Fischer, the immigration attorney, said that Avila is engaged in the same kind of business that Fischer is. The settlement agreement Avila signed in the suit with the Perezes implied that he had been practicing immigration law. Samuel Avila filed over 2,000 G–28s indicating that he represented the individuals seeking immigration benefits, at times signing as an attorney. During the course of the radio programs, Avila explained some of the immigration laws and gave advice regarding those laws. Dubove also testified that both Samuel and Nilsa Avila had filled out applications and signed G–28s, which they are not qualified to file. He concluded that they had been engaged in the unauthorized practice of law before Samuel Avila began working for Dubove. Exhibit 17 is signed by Samuel Avila, "Counselor at Law." In Exhibits 18, 19, and 20, Samuel Avila said he represented the client in immigration proceedings.

Maribel Tavera testified that she hired Samuel and Nilsa Avila to help with immigration services. Also, the Avilas had helped her friends and relatives. She testified that Samuel Avila told her he was a lawyer and Nilsa Avila assisted him. They advised her as to the best course of action, selected the appropriate immigration forms, and filled out forms for her, for a fee. She testified that if she had known Samuel and Nilsa Avila were not certified or licensed to provide immigration services, she would not have hired them.

It is undisputed that neither Samuel Avila nor Nilsa Avila is an attorney and that neither they nor Mundo Latino is accredited by the Board of Immigration Appeals. At the time of trial, they were both notaries. In a letter dated June 22, 2004, Samuel Avila stated that he is a notary. Further, his notary stamp appears on Exhibit 18, which is dated March 21, 1998.

The record contains more than a scintilla of evidence that both Samuel and Nilsa engaged in the unauthorized practice of law and violated the state law governing notary publics. *See* Tex. Gov't Code Ann. § 406.017(a); *Cortez,* 692 S.W.2d at 50–51. Therefore, there is sufficient evidence to support the jury's findings that both Samuel and Nilsa Avila engaged in false, misleading, or deceptive acts or practices in the conduct of trade or commerce. *See* Tex. Gov't Code Ann. § 406.017(f); *Thomas,* 226 S.W.3d at 703–04. We overrule the Avilas' third, fifth, and sixth issues.

### Damages

In their seventh issue, the Avilas contend the trial court erred in ordering them to pay $60,000.00 each to restore sums taken by means of unlawful acts or practices. They argue that there is no evidence of the specific information required to support these awards. They contend the State was required to present evidence of identifiable persons, how much each person paid the Avilas, and that these sums were paid in the two years before the State filed its petition. They further assert that the State is not an identifiable person for which the statute authorizes restitution.

The statute provides as follows:

The court may make such additional orders or judgments as are necessary to compensate identifiable persons for actual damages or to restore money or property, real or personal, which may

have been acquired by means of any unlawful act or practice. Damages may not include any damages incurred beyond a point two years prior to the institution of the action by the consumer protection division.

TEX. BUS. & COM.CODE ANN. § 17.47(d) (Vernon Supp.2007).

In Question 5, the jury was asked:

What sum of money, if any, if paid now in cash, is necessary to restore money acquired from identifiable persons by means of unlawful acts or practices committed by Defendants?

You are instructed that an award to restore money acquired by means of any unlawful act or practice, if any, may only be made to compensate identifiable persons for money acquired on or after March 31, 2003.

The jury answered $60,000.00 for Samuel Avila and $60,000.00 for Nilsa Avila.

Actions filed by the Attorney General's office pursuant to Section 17.47 are de facto class actions. *See Thomas,* 226 S.W.3d at 707. Members of the class may be identified by Exhibits 2 and 3. State's Exhibit 2 includes seven G–28s filed on behalf of petitioners in 2004 and 1999. State's Exhibit 3, which summarizes 2,181 documents filed by the Avilas, indicates the year each was filed, including 2005 and going back more than ten years. Samuel Avila testified that the minimum he charged was $150.00 and the evidence showed that he frequently charged $300.00 or $750.00 per document filed. Tavera said she paid $1,000.00 for immigration services. Approximately 374 documents were filed in 2004 and 2005. Thirty-five documents were filed in early 2003. Based on Janda's testimony explaining the make-up of the receipt numbers listed on Exhibit 3, it is possible to determine which documents were filed after March 31, 2003. Due to the manner in which the evidence was presented, it is not possible to determine how much the consumers named in Exhibit 3 paid to the Avilas. The jury was aware of the amounts Avila charged generally. If, for example, the jury based its decision on each of the 409 consumers who filed in the two years immediately prior to the suit having paid $750.00, its award would be well within the evidence. If, however, the jury based its award on the evidence that each of the 409 paid $150.00, the total would be less than the $120,000.00 awarded. But we need not confine our review to these 409 consumers.

The Avilas requested the language in Question 5 limiting the restitution award to the two years before suit was filed. In the *Thomas* decision, the Corpus Christi court determined that the two year statute of limitation in Section 17.47(d) does not apply to restitution. *Id.* at 710. We agree with that determination. To allow the Avilas to prevail in their argument that the restitution awards cannot stand because the evidence does not prove the consumers paid them $120,000.00 between March 31, 2003 and March 30, 2005 would be tantamount to allowing the Avilas to profit from invited error. *See Bales v. Delhi–Taylor Oil Corp.,* 362 S.W.2d 388, 391 (Tex.Civ. App.-San Antonio 1962, writ ref'd n.r.e.) (Party cannot predicate error on instructions given at his own request.). When allowed to consider all of the evidence, that there were at least 2,181 consumers who each paid at least $150.00 to the Avilas, not just evidence of payments during the two years before the suit was filed, there is more than enough evidence to support the jury's award even if it is based on the smallest amount charged by Avila. We overrule the Avilas' seventh issue.

In their eighth issue, the Avilas contend the trial court erred in not instructing the jury to restrict its assessment of civil penalties to false, misleading, or deceptive acts or practices committed for the two years

immediately preceding the institution of the State's suit. They argue that Section 17.565 of the DTPA provides for a two year limitations period and the statute does not make an exception for suits brought by the Attorney General's office.

A party complaining of the judgment on the basis that an instruction was not given to the jury must have presented a written request that the omitted instruction be included in the charge and tendered the proposed instruction in substantially correct wording. TEX.R. CIV. P. 278. Here, the Avilas did not object to the charge on the basis that a limiting instruction was needed in Question 6. Nor did they tender a proposed instruction. Therefore, they have waived this complaint.

■ Furthermore, to allow the State to enforce its laws to protect the general public, the State in its sovereign capacity is not subject to the defense of limitations. *State v. Durham*, 860 S.W.2d 63, 67 (Tex. 1993); *Thomas*, 226 S.W.3d at 710. This exemption applies to actions brought for the use and benefit of the state. *McNutt v. Cox*, 133 Tex. 409, 411, 129 S.W.2d 626, 627–28 (1939). The attorney general is authorized to bring suit under the DTPA in the public interest. *See* TEX. BUS. & COM. CODE ANN. § 17.47(a) (Vernon Supp.2007). The DTPA also makes it clear that the consumer protection division of the attorney general's office acts in the name of the state and does not represent persons to whom the consumer protection division requests that the court award relief. TEX. BUS. & COM.CODE ANN. § 17.47(h) (Vernon Supp.2007). Since the State did not merely assert a claim that belonged to the individual consumers, the State does get the benefit of the exemption. *See In re T.L.K.*, 90 S.W.3d 833, 839–40 (Tex.App.-San Antonio 2002, no pet.) (Attorney General asserts a right of action of the state by bringing an action for use and benefit of the state when it seeks to enforce a

child support obligation and limitations defense is not available.); *State v. Airgas–Mid South, Inc.*, 83 S.W.3d 890, 892 (Tex. App.-Texarkana 2002, no pet.) (Limitations defense is available where state asserts a workers' compensation subrogation claim because the claim belongs to the injured employee and is not a right of action of the state.). Therefore, an instruction to the jury that it should consider only evidence of violations occurring in the two years before suit was filed would be erroneous. *See Thomas*, 226 S.W.3d at 710–11. The trial court did not err in not giving the jury such an instruction. We overrule the Avilas' eighth issue.

### INJUNCTION

■ In their ninth issue, the Avilas contend the trial court abused its discretion in granting the injunction because it is overbroad, it enjoined them from acts not declared unlawful by the DTPA, and it enjoined them from activities that are lawful and a proper exercise of their rights. Further, they argue there is no evidence of irreparable injury or the absence of an adequate remedy at law.

The court restrained the Avilas from transferring, concealing, destroying, or removing from the jurisdiction of the court any written materials relating to their business; transferring, concealing, encumbering, depleting, or removing from the jurisdiction of the court any funds or property belonging to the Avilas; giving advice and counsel to any person regarding United States immigration laws or documents; representing to any person that they can represent the interest of another in a judicial or administrative proceeding; selecting or preparing immigration forms, applications, or legal documents to be completed or filed on behalf of persons seeking to legalize their residency status or to obtain lawful employ-

ment in the United States or advising persons as to the type of document needed in such a situation; soliciting or accepting compensation of any type for providing immigration or legal services to consumers or to obtain relief of any kind on behalf of another from any officer, agency, or employee of this state or the United States; stating or implying that they are attorneys licensed to practice law or that they have an attorney on staff to assist with immigration related matters; and advertising immigration related services of any kind.

The DTPA authorizes the consumer protection division to request a permanent injunction as a remedy. *See* TEX. BUS. & COM.CODE ANN. § 17.47(a). When it is determined that a statute is being violated, it is within the province of the district court to restrain it. *State v. Tex. Pet Foods, Inc.*, 591 S.W.2d 800, 805 (Tex. 1979). On appeal, the review of the trial court's grant of a permanent injunction is usually limited to the question of whether such action constituted an abuse of discretion. *Isuani v. Manske–Sheffield Radiology Group P.A.*, 805 S.W.2d 602, 606–07 (Tex.App.-Beaumont 1991, writ denied). The trial court abuses its discretion when it misapplies the law to the established facts. *Rugen v. Interactive Bus. Sys., Inc.*, 864 S.W.2d 548, 551 (Tex.App.-Dallas 1993, no writ). When an applicant relies upon a statutory source for injunctive relief, such as the DTPA, the statute's express language supersedes the common law injunctive relief elements such as imminent harm or irreparable injury and lack of an adequate remedy at law. *West v. State*, 212 S.W.3d 513, 519 (Tex.App.-Austin 2006, no pet.). When the jury finds violations occurring and continuing up to or near the date of the trial, the trial court may, in equity, determine that the defendant has engaged in a settled course of conduct and may assume that it will continue, absent clear proof to the contrary. *Tex. Pet Foods, Inc.*, 591 S.W.2d at 804.

As explained above, the Avilas were engaged in acts that violated the DTPA and these acts are rightfully restrained by the permanent injunction. *See* TEX. BUS. & COM.CODE ANN. § 17.47(a). There need not be evidence of irreparable injury or the absence of an adequate remedy at law. *See West*, 212 S.W.3d at 519.

We do, however, agree with the Avilas regarding paragraph B of the injunction. Paragraph B restrains them from

transferring, spending, hypothecating, concealing, encumbering, depleting, modifying, dissipating, distributing, or removing from the jurisdiction of [the trial court] any money, stocks, bonds, assets, notes, equipment, funds, accounts receivable, policies of insurance, trust agreements, or other property, real, personal or mixed, wherever situated, belonging to or owned by, in possession of, or claimed by Defendants.

The stated purpose of the statutory injunction is to prevent violations of the DTPA. *See* TEX. BUS. & COM.CODE ANN. § 17.47(b) (Vernon Supp.2007). Rendering the Avilas unable to pay their bills does not further this purpose. Additionally, some of their money has been earned through legitimate business activities. The Avilas should have access to money made in a manner that does no harm to the public. It is within our discretion to modify an injunction that is overbroad. *Ctr. for Econ. Justice v. Am. Ins. Ass'n*, 39 S.W.3d 337, 347 (Tex.App.-Austin 2001, pet. denied). Therefore, we delete paragraph B of the injunction. With that modification, we overrule the Avilas' ninth issue.

### CONCLUSION

The Avilas raised no valid complaints regarding the admissibility of the evidence and the trial court's rulings thereon. They

waived their charge error complaints. The evidence is sufficient that Samuel and Nilsa Avila engaged in false, misleading, or deceptive acts or practices in the conduct of trade or commerce, and the evidence supports the jury's restitution awards. Because the injunction is overbroad, we delete paragraph B, which restrains the Avilas from doing anything with any of their financial assets.

As modified, we *affirm* the trial court's judgment and permanent injunction.

WORTHEN, C.J., not participating.