NUMBER 13-06-00649-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


JOEL MOLANO, Appellant,


v.
 


THE STATE OF TEXAS, Appellee.

 


On appeal from the 92nd District Court 


of Hidalgo County, Texas.


 


O P I N I O N



Before Justices Rodriguez, Garza, and Vela 


Opinion by Justice Rodriguez



 Appellee, the State of Texas, acting through the Consumer Protection and Public
Health Division of the Attorney General's Office (the State or Attorney General), sued
appellant, Joel Molano, for the unauthorized practice of law and violations of the Texas
Deceptive Trade Practices-Consumer Protection Act (DTPA) and chapter 406 of the Texas
Government Code. See Tex. Bus. & Com. Code Ann. § 17.47 (Vernon Supp. 2008); Tex.
Gov't Code Ann. § 406.016(d) (Vernon 2005) ("A notary public not licensed to practice law
in this state may not give legal advice or accept fees for legal advice."). The trial court
rendered judgment for the State, ordering permanent injunctive relief and awarding a
monetary judgment against Molano. By three issues, Molano contends that the trial court
abused its discretion in denying his motion to abate and that the trial court erred in its
interpretation of the DTPA when it awarded civil penalties, restitution, and attorney's fees
in the absence of a violation of injunctive relief. We affirm.

I. Background


 The State brought the underlying lawsuit seeking injunctive relief and praying for civil
penalties in the amount of $20,000 per DTPA violation, restitution to consumers of money
or property acquired by means of Molano's acts or practices, see Tex. Bus. & Com. Code
Ann. § 17.47 (Vernon Supp.2008), and reasonable attorney's fees and court costs. See
Tex. Gov't Code Ann. § 406.006(c) (Vernon 2005). Molano filed a motion to abate alleging
that "[the State] has failed to follow the prerequisites of a class action lawsuit contained in
Rule 42 of the Texas Rules of Civil Procedure" and praying that the trial court abate the
underlying proceeding "until [the State] follows the requirements set out in the class action
provision contained in Rule 42." See Tex. R. Civ. P. 42. The trial court, after hearing
Molano's motion to abate and considering the arguments of counsel, denied the motion.

 Following a bench trial, the trial court signed a final judgment ordering permanent
injunctive relief and awarding the following:

 that . . . [the] State . . . have and recover from . . . Molano $10,000.00 as
restitution to consumers of money acquired by means of false, misleading,
or deceptive acts or practices of defendant; $10,000.00 as a civil penalty to
the State . . . for false, misleading, or deceptive acts or practices committed
by [Molano]; and $15,000.00 as reasonable and necessary attorney's fees
to the State . . . .


The trial court filed findings of fact and conclusions of law, (1) and this appeal ensued.

II. Motion to Abate


 By his first issue, Molano contends that the trial court erred in denying his plea in
abatement because the State failed to comply with all requirements for class certification
and notification under rule 42 of the Texas Rules of Civil Procedure. See id. Molano
argues that by denying his plea the trial court forced him to proceed to trial on the merits
in violation of his due process rights and without his having an opportunity to defend
himself against potential claimants, to know what each claimant was alleging.

A. Standard of Review and Applicable Law


 A motion to abate is used to challenge the plaintiff's pleadings by which the
defendant identifies a defect and asks the trial court to keep the suit from going forward
until plaintiff corrects the defect. Martin v. Dosohs I, Ltd., 2 S.W.3d 350, 354 (Tex.
App.-San Antonio 1999, pet. denied); see Am. Motorists Ins. Co. v. Fodge, 63 S.W.3d
801, 805 (Tex. 2001). As this Court has said, "[a] plea in abatement should not only show
the grounds upon which the suit is improperly brought, but should also show how it should
have been brought, and should always state facts, not conclusions of law." Bryce v.
Corpus Christi Area Convention & Tourist Bureau, 569 S.W.2d 496, 499 (Tex. Civ.
App.-Corpus Christi 1978, writ ref'd n.r.e.) (op. on reh'g). Whether to abate an action is
a matter within the trial court's sound discretion. Dolenz v. Cont'l Nat'l Bank, 620 S.W.2d
572, 575 (Tex. 1981); Dahl v. Hartmen, 14 S.W.3d 434, 436 (Tex. App.-Houston [14th
Dist.] 2000, pet. denied). On appeal, the trial court's decision on a motion to abate is
reviewed under an abuse of discretion standard. Dolenz, 620 S.W.2d at 575; Dahl, 14
S.W.3d at 436.

B. Analysis


1. The Law


 Section 17.46(a) of the DTPA provides, in relevant part, as follows:

 False, misleading, or deceptive acts or practices in the conduct of any trade
or commerce are hereby declared unlawful and are subject to action by the
consumer protection division [of the Attorney General's office] under section
17.47 . . . of this code.


Tex. Bus. & Com. Code Ann. §17.46(a) (Vernon Supp. 2008); Bara v. Major Funding Corp.
Liquidating Trust, 876 S.W.2d 469, 471 (Tex. App.-Austin 1994, writ denied) ("Under this
provision, the attorney general may bring an action in the public interest against an entity
it believes is engaged in conduct prohibited by the DTPA."). The DTPA, by its own terms,
authorizes the Attorney General to bring an action for injunctive relief whenever the
consumer protection division has "reason to believe" unlawful trade practices are occurring. 
Tex. Bus. & Com. Code Ann. §17.47(a) (Vernon Supp. 2008). Section 17.47(a) specifically
provides for the following injunctive relief:

 Whenever the consumer protection division [of the Attorney General's office]
has reason to believe that any person is engaging in, has engaged in, or is
about to engage in any act or practice declared to be unlawful by this
subchapter, and that proceedings would be in the public interest, the division
may bring an action in the name of the state against the person to restrain
by temporary restraining order, temporary injunction, or permanent injunction
the use of such method, act, or practice.

Id.; see id. § 17.47(b) (Vernon Supp. 2008) (explaining that the "court may issue temporary
or permanent injunctions to restrain and prevent violations of this subchapter . . . ."). The
DTPA also authorizes civil penalties to punish violators for their unlawful conduct; penalties
which are to be paid to the State. See Tex. Bus. & Com. Code Ann. § 17.47(c) (Vernon
Supp. 2008). In addition to the primary remedies of injunctive relief and civil penalties, the
court may order restitution on behalf of consumers. See id. § 17.47(d) (providing that a
"court may make such additional orders or judgment as are necessary . . . to restore
money or property").

 Molano does not challenge the State's authority to bring an action for relief under
the DTPA when it believes unlawful trade practices are occurring. Molano does, however,
challenge the State's authority to bring such an action without following the rules of civil
procedure as they relate to the filing of class action cases, specifically class certification
and notification. See Tex. R. Civ. P. 42. Appellant argues that because other litigants are
required to follow class-action rules, so should the State. We disagree.

2. Standing as a Class Representative


 In class actions, the proposed plaintiff must be a member of the class which he
claims to represent. See id. at 42(a) ("One or more members of a class may sue or be
sued as representative parties . . . ."). The Seventh Circuit has held that a state's attorney
does not have standing to bring a class action because he is not a member of the class
which he purports to represent, as required by federal law. (2) Ex rel. Bowman v. Home Fed.
Sav. & Loan, 521 F.2d 704, 707 (7th Cir. 1975); see Fed. R. Civ. P. 23(a) (providing that
"one or more members of a class may sue or be sued as representative parties").

 In the present case, the Attorney General sued Molano for the unlawful services he
offered for sale to, sold to, or performed for consumers. The Attorney General did not
allege in his petition that either he or the State purchased Molano's services. The Attorney
General did not purport to sue as a representative of the class of persons who purchased
Molano's services. Under the facts of this case, neither the Attorney General nor the State
is a member of the purported class and could not have brought a class action lawsuit on
behalf of private consumers under rule 42. See Tex. R. Civ. P. 42. To hold that the
language of section 17.47(d) confers standing to the Attorney General to bring a class
action would be reading something into the provision that is simply not there.

3. Authorization by Statute


 We note, however, that the State may bring a class action if it is authorized to do
so under state statute. For example, the express language of the Texas Insurance Code
authorizes the Attorney General to bring a class action. See Tex. Ins. Code Ann. §
541.251 (Vernon Supp. 2008). Section 541.251(a) of the insurance code provides that if
"a member of the insurance buying public has been damaged" by unlawful practices, the
Department of Insurance "may request the attorney general to bring a class action." Id. §
541.251(a). In holding that the prerequisites for class actions must be applied to damage
claims asserted by the Attorney General under the insurance code, the Texas Supreme
Court observed, "[t]he Legislature could have structured this remedy in various ways, but
when it authorized attorneys general to bring a 'class action,' we presume it meant what
the [Insurance] Code says." Farmers Group, Inc., v. Lubin, 222 S.W.3d 417, 426 (Tex.
2007). The DTPA, unlike the insurance code, does not provide for the use of class actions
by the Attorney General.

4. De Facto Class Action


 Nonetheless, even in the absence of standing and express statutory authority,
Molano contends that cases filed by the Attorney General under section 17.47 on behalf
of a specified group of individuals must be filed as class actions because such suits qualify
as de facto (3) class actions. In support of his argument, Molano relies on Bara, 876 S.W.2d
at 472-73, and Thomas v. State, 226 S.W.3d 697, 707 (Tex. App.-Corpus Christi 2007,
pet. dism'd). While the courts in Bara and Thomas characterize suits filed by the Attorney
General under section 17.47 as de facto class actions, this characterization neither
transforms the nature of a DTPA action nor authorizes the Attorney General to sue on
behalf of private individuals.

 In Bara, a case of first impression, the Austin Court of Appeals addressed the issue
of "whether an action brought by the attorney general pursuant to DTPA section 17.47 in
response to consumer complaints tolls the running of the statutes of limitations on the
consumers' individual claims." Bara, 876 S.W.2d at 471. Acknowledging that "[t]he
interests presented . . . are closely akin to the interests presented in class action litigation,"
and after examining "the body of law governing class actions" as it related to "the running
of the statute of limitations for all members of the class," the Bara court concluded that:

 in situations in which the attorney general files suit under section 17.47 of the
DTPA on behalf of a specified group of individuals, that suit qualifies as a de
facto class action and the statute of limitations is tolled during the period in
which the individuals are participants in the attorney general's suit.


See id. 471-73. Thus, the Baras, who rejected the settlement offer in the attorney
general's DTPA action and filed their own lawsuit, were permitted to rely on class action
tolling principles. See id.

 In Thomas, this Court considered whether the trial court violated section 17.47(d)
because it ordered restitution to "consumers" without specifying the identifiable persons
entitled to restitution and the amount of money to be paid to each. (4) See 226 S.W.3d at
705. Agreeing with the State that actions filed by the attorney general under section 17.47
qualify as de facto class actions, we concluded that "the plain language of section 17.47(d)
authorizes the trial court to order the restoration of money or property acquired by unlawful
means, without any requirement that the trial court specify "identifiable persons" or the
amount of money to be paid to each consumer." Id. at 707; see Avila v. State, 252 S.W.3d
632, 646 (Tex. App.-Tyler 2008, no pet.) (agreeing that actions filed by the Attorney
General's office pursuant to section 17.47 are de facto class actions, the court concluded
that the members of the class may be identified by the State's exhibits offered at trial). 
Thomas is inapposite to Molano's argument that the State should be required, at the
inception of the lawsuit, to follow the classification and notification procedures of rule 42. 
Having concluded, in Thomas, that the trial court need not specify "identifiable persons"
or the amount of money to be paid to each consumer, we will not now conclude that the
State must follow rule 42 procedures when filing suit for violation of the DTPA. See Tex.
R. App. P. Molano's reliance on Thomas is misplaced. The Attorney General sought
restitution of monies acquired by means of the alleged unlawful acts in the underlying case. 
Molano provides no other authority, and we find none, to support his contention that the
exercise of this power converts the State's lawsuit into a rule 42 class action.

5. Efficient and Economical Procedures to Secure Protection


 Furthermore, section 17.44(a) provides the following rule of construction for the
courts:

 [The DTPA] shall be liberally construed and applied to promote its underlying
purposes, which are to protect consumers against false, misleading, and
deceptive business practices, . . . and to provide efficient and economical
procedures to secure such protection.


Tex. Bus. & Com. Code Ann. § 17.44(a) (Vernon 2002). As the State urges, to hold that
a request for restitution by the Attorney General perforce converts the DTPA action into a
class action would impede its efficient and economical procedure to secure the protection
of consumers from deceptive business practices. Requiring actions brought by the
Attorney General under the DTPA to meet the class certification and notice requirements
would impact their efficiency and economy of those actions.

 Therefore, we conclude that this DTPA action against Molano was properly brought. 
The trial court correctly exercised its discretion by denying Molano's motion to abate. We
overrule Molano's first issue.

III. Assessment of Civil Penalties, Restitution, and Attorney's Fees


 By issues two and three, Molano contends that the trial court erred in its
interpretation of section 17.47 when it awarded a monetary judgment against him. Molano
asserts that the statute's provision for an award of civil penalties, restitution, and attorney's
fees applies only to violations of restraining orders, and because there is no evidence of
a prior temporary or permanent injunction, the trial court's assessment of civil penalties,
restitution, and attorney's fees should be set aside as a matter of law. We disagree.

A. Applicable Law and Standard of Review


 In construing a statute, the primary objective is to determine and give effect to the
Legislature's intent. McIntyre v. Ramirez, 109 S.W.3d 741, 745 (Tex. 2003). The starting
point for review is with the "plain and common meaning of the statute's words." Id.; see
Tex. Gov't Code Ann. § 311.011(a) (Vernon 2005). It is a question of law for the court to
decide whether a particular remedy is available under a statute. Wal-Mart Stores, Inc. v.
McKenzie, 997 S.W.2d 278, 280 (Tex. 1999) (per curiam) (citing Johnson v. City of Fort
Worth, 774 S.W.2d 653, 656 (Tex. 1989) (per curiam) (providing that statutory construction
is a question of law)). Because the interpretation of statutes is a question of law, the
standard of review is de novo. Bragg v. Edwards Aquifer Auth., 71 S.W.3d 729, 734 (Tex.
2002).

B. Analysis


1. Civil Penalties


 The pertinent language of section 17.47(c) provides the following:

 In addition to the request for a temporary restraining order, or permanent
injunction in a proceeding brought under Subsection (1) of this section, the
consumer protection division may request, and the trier of fact may award,
a civil penalty to be paid to the state in an amount of:


 (1) not more than $20,000 per violation . . . .


Tex. Bus. & Com. Code Ann. § 17.47(c) (Vernon Supp. 2008). Section 17.47(e) sets out
that "[a]ny person who violates the terms of an injunction under this section shall forfeit and
pay to the state a civil penalty of not more than $10,000 per violation, not to exceed
$50,000." Id. § 17.47(e) (Vernon Supp. 2008). The State concedes that section 17.47(e)
applies in circumstances in which the State seeks a civil penalty for a violation of an
injunction. However, the trial court's award of civil penalties, in this case, was based on
section 17.47(c), not section 17.47(e).

 The trial court found in its second finding of fact that at least 200 persons purchased
Molano's services and that each sale transaction constituted an unlawful act or practice
and a separate violation of the DTPA. It also concluded in its fifteenth conclusion of law
that "[j]ustice requires the imposition of a civil penalty in the amount of $10,000.00 for the
violations of law committed by [Molano]." It is apparent that the trial court's reference to
"law" is to section 17.47(c) of the DTPA and the "violations" refer to the DTPA violations
stated in its finding. The trial court makes no reference to an award of civil penalties for
the violation of an injunction. We find nothing in the trial court's findings or conclusions or
in the final judgment that substantiates Molano's premise that the trial court must have
imposed civil penalties pursuant to section 17.47(e). Thus, we conclude that the trial
court's award of civil penalties for violations of the DTPA was consistent with, and
authorized under, section 17.47(c). Id. § 17.47(c) (Vernon Supp. 2008).

2. Restitution


 The pertinent language of section 17.47(d), on which the trial court relied in
awarding restitution, provides that "[t]he court may make such additional orders or
judgments as are necessary . . . to restore money or property, real or personal, which may
have been acquired by means of any unlawful act or practice." Id. § 17.47(d) (Vernon
Supp. 2008). The legislative grant of judicial authority to restore money acquired by
unlawful means is the basis for the trial court's award of restitution as framed in its final
judgment. Read in context, the provision has no language or words that would condition
the availability of the restitution remedy upon a violation of an injunction, as Molano
contends. Rather, the provision is clear that the trial court is authorized to award restitution
of money "which may have been acquired by means of any unlawful act or practice." In
its findings of fact and conclusions of law, the trial court made the necessary finding and
conclusion to support that it acted within the grant of authority conferred by section
17.47(d). See id. The trial court's third finding of fact provides that Molano "solicited,
charged, and received compensation, totaling $10,000.00, from consumers for giving
advice and for rendering the services," and the court's fourteenth conclusion of law sets
out that Molano "acquired $10,000.00, by means of his unlawful acts and practices, from
consumers who are entitled to restitution." Contrary to Molano's contention, section
17.47(d) does not require a violation of an injunction before the trial court may award
restitution.

3. Attorney's Fees


 In addition, the State prayed for, and the trial court granted, attorney's fees under
the Texas Government Code. Section 402.006(c) provides the following: "In a case in
which the state is entitled to recover a penalty or damages the attorney general is entitled,
on behalf of the state, to reasonable attorney's fees and court costs." Tex. Gov't Code
Ann. § 406.006(c) (Vernon 2005); see State v. Triax Oil & Gas, Inc., 966 S.W.2d 123, 127
(Tex. App.-Austin 1998, no writ); see also Merchants Fast Motor Lines v. State, 917
S.W.2d 518, 524 (Tex. App.-Waco 1996, writ denied) (concluding that the State is also
entitled to the recovery of attorney's fees when it recovers penalty or tort damages). The
State recovered a civil penalty of $10,000 from Molano. Thus, the award of attorney's fees
was within the authority granted to the trial court by section 402.006(c) of the government
code and was proper. See Tex. Gov't Code Ann. § 406.006(c) (Vernon 2005).

 In summary, the plain and clear language of section 17.47 of the DTPA and section
402.006 of the government code expressly authorizes the remedies awarded by the trial
court in this action. See McIntyre, 109 S.W.3d at 745; Tex. Bus. & Com. Code Ann. §
17.47 (Vernon Supp. 2008); Tex. Gov't Code Ann. §§ 311.011(a), 402.006 (Vernon 2005). 
We conclude that the trial court did not err in awarding remedies available under the
statute in this case, including civil penalties, restitution, and attorney's fees, without a
finding that Molano violated an injunction. See Wal-Mart Stores, 997 S.W.2d at 280. We
overrule Molano's second and third issues.

IV. Conclusion


 We affirm the judgment of the trial court.

 

 

 NELDA V. RODRIGUEZ

 Justice


Opinion delivered and filed this

28th day of August, 2008.


1. The trial court made the following pertinent findings of fact:


 1. On or after January 1, 2005, to May 4, 2006, [Molano] engaged in the business of
giving advice or rendering a service requiring the use of legal skill and knowledge in:

 

 a. interviewing persons and advising them as to whether or not to file a petition
or application for divorce under state law or for immigration benefits under federal
law;

 

 b. drafting and preparing pleadings or documents for others in judicial or
administrative proceedings relating to divorce actions or immigration to the United
States;


 c. Drafting and preparing wills, contracts, agreements, powers of attorney, and
affidavits for others;

 

 d. selecting and completing legal forms or instruments for others in divorce
actions and proceedings relating to immigration to the United States; and/or 

 

 e. preparing legal instruments affecting title to real property, such as deeds and
deeds of trust;


 2. In the conduct of business, [Molano] advertised, offered for sale, and/or sold his
services to consumers of this State. At least 200 persons acquired by purchase defendant's
services, and the sale transaction with each person constitutes an unlawful act or practice
and a separate violation of the Texas Deceptive Trade Practices - Consumer Protection Act,
Tex. Bus. & Com. Code Ann. § 17.41, et seq.;

 

 3. On or after January 1, 2005, to May 4, 2006, [Molano] solicited, charged, and
received compensation, totaling $10,000.00, from consumers for giving advice and for
rendering the services enumerated in paragraph 1 above; and,


 . . . .


 6. Attorney for [the State] spent 150 hours working on this case that were necessary
for the proper representation of the State, and the usual and customary rate charged by
practicing attorneys of his level of experience in Hidalgo County is $150.00 per hour.


 The pertinent part of the trial court's conclusions of law are the following:

 14. [Molano] acquired $10,000.00, by means of his unlawful acts and practices, from
consumers who are entitled to restitution;

 

 15. Justice requires the imposition of a civil penalty in the amount of $10,000.00 for the
violations of law committed by [Molano];

 

 16. A reasonable fee for the necessary services of the State's attorney of record in this
case is $15,000.00; and,

 

 17. As a result of the conclusions of law (numbers 14, 15, and 16), [Molano] is indebted
to [the State] for the sum of $35,000.00.
2. "Class actions are governed by rule 42 of the Texas Rules of Civil Procedure, rewritten in 1977 to
mirror the class action provisions of the Federal Rules of Civil Procedure." Bara v. Major Funding Corp., 876
S.W.2d 469, 472-73 (Tex. App.-Austin 1994, writ denied) (citing Tex. R. Civ. P. 42; Thomas McElroy, Civil
Pretrial Procedure § 618 (West 1980 & Supp. 1992)). Federal case law interpreting federal rule 23 may
be relied on by Texas courts in construing similar language found in rule 42 where there are no Texas cases
interpreting the issue. See Glassell v. Ellis, 956 S.W.2d 676, 682 (Tex. App.-Texarkana 1997, writ dism'd
w.o.j.).
3. Black's Law Dictionary defines "de facto" as "[a]ctual; existing in fact; having effect even though not
formally or legally recognized." Black's Law Dictionary 353 (8th ed. 2005).
4. We also considered whether the judgment violated section 17.47(d) because it ordered restitution
in an amount that included monies paid to the Thomases beyond a point two years prior to the filing of the
lawsuit and concluded that the two-year limitations period applied only to the award of actual damages and
not to restitution. Thomas v. State, 226 S.W.3d 697, 705, 708 (Tex. App.-Corpus Christi 2007, pet. dism'd).