# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00724-CV

**David Jason West and Pydia, Inc. d/b/a
www.bankopp.com, Appellants**

**v.**

**State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. GV504584, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## O P I N I O N

In this interlocutory appeal, we must determine whether the district court abused its discretion by granting the State's request for a supplemental temporary injunction and asset freeze against appellants, David West and Pydia, Inc. d/b/a www.bankopp.com (collectively "West"). In three issues, West asserts that the district court erred by granting the temporary injunction because the State did not demonstrate (1) a probable right to recovery or (2) a probable injury, and (3) the order did not specifically state the reasons for its issuance. Because we hold that the district court did not abuse its discretion, we affirm the supplemental temporary injunction order.

## BACKGROUND

At the supplemental temporary injunction hearing, the court admitted evidence of a printed copy of West's Web site, testimony from an investigator employed by the Consumer Protection and Public Health Division of the Texas Attorney General's office, and documents from Hibernia National Bank in Baton Rouge provided in response to the State's civil investigative demand. The investigator's testimony and the Web site evidence revealed that West used an Austin radio commercial, a recorded telephone message (identified as a "phone overview"), and a Web site to advertise meetings at a local hotel about a "banking opportunity" that would allow any "U.S. Citizen" to pay off all personal debt—including "credit cards, mortgages, student loans, vehicles, loans, IRS settlements, and back child support"—before December 31, 2005, by securing a "loan" from an unnamed bank. West's "www.bankopp.com" Web site also stated that "David [West] found a Bank that is willing to give individuals loans to pay off their debts. Then the Bank is willing to turn around and forgive that loan so it doesn't have to be paid off." It asserted that "two little known banking practices . . . Fractional Banking and Forgiven Loans" made this "one shot opportunity" possible. The site claimed that although "this opportunity is legal," the "Federal Reserve will undoubtedly close the loopholes that allowed the project to take place this once. While the system intended on well connected, wealthy individuals to be able to take advantage of this, it was never intended that regular every day people would gain access to it."

The site further claimed that the unnamed bank had agreed to pay off $100 million in debt and that "[the] project is about David [West]'s looking for others to add their debt to the pile David started." The idea was to accumulate $100 million in debt for the bank to "fractionalize then

2

forgive" so that "the bank can make money and the folks with David can get out of debt." The site claimed that, after "David told his 10 closest friends about the project," word spread quickly throughout Louisiana and Mississippi. The site also explained that West accelerated its marketing of the project following Hurricane Katrina:

> After Hurricane Katrina hit the area he had been putting the word out in, David switched gears to Radio advertising across the South and is now starting a hectic schedule of FREE open meetings in major Southern Cities. These Open Meetings will have hundreds of people in attendance and are expected to help reach[] the goal of $100 Million in debt before Thanksgiving. This would leave plenty of time for the bank to pay before December 31st (the bank only needs 10 business days).

As a signal of their "commitment to be involved with the project," the site asked participants to deposit a wire transfer of $5,000 to a bank account in Panama, or to the "Del Sur International Holdings" account with Hibernia National Bank in Baton Rouge. According to the site, after the money was submitted, the bank would perform a financial analysis and might contact the participant to discuss any issues: "[T]he bank will analyze each project member's debt and provide feedback if there are concerns." Also after wiring their $5,000 "commitment/deposit money," the site stated that participants would receive a document "guarantee[ing] that the loan that [they] are signing will be forgiven and that [they] will not have to pay it back!" Visitors to the Web site were not informed that the Del Sur International Holdings account, to which the $5,000 wire transfers were directed, was the sole proprietorship of David West.

The State filed suit under the Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. §§ 17.46 (a)-(b), .47 (West Supp. 2005) ("DTPA") against David

3

West, Roxana Suadi West,[1] Carlos M. Suadi, and Pydia, Inc. d/b/a www.bankopp.com, seeking civil penalties and injunctive relief based on the debt elimination "service for sale to consumers." The State obtained a temporary restraining order and temporary injunction against West, preventing any further marketing in Texas of the "banking opportunity."[2]

After learning that David West attempted to withdraw all funds from the Baton Rouge account to which the participants' $5,000 wire transfers had been directed,[3] the State obtained a supplemental restraining order, freezing the funds in the Hibernia bank account. The State also sought to convert the supplemental restraining order into a supplemental temporary injunction, maintaining the freeze on the account. Following a hearing on October 25, 2005, the district court entered an order preventing David West, Roxana Suadi West, Carlos M. Suadi, and Pydia, Inc. d/b/a www.bankopp.com from accessing the Hibernia bank account.

Specifically, the order enjoined them (and those associated with them) from

- transferring, spending, hypothecating, concealing, encumbering, withdrawing, removing or allowing the transfer, removal, or withdrawal of any funds from Account # [], held at Hibernia National Bank; and

- transferring, spending, hypothecating, concealing, encumbering, withdrawing, removing or allowing the transfer, removal, or withdrawal of any funds from any

---

[1] Roxana Suadi West and Carlos M. Suadi are not parties to this appeal. The State's petition implicates them by alleging that the radio advertisements for the "debt elimination" seminar were paid by Pydia, Inc. with West's and Suadi's credit cards. The petition also alleges that Roxana West paid for the seminar room at the hotel where the meetings were scheduled.

[2] David West and Pydia, Inc. d/b/a www.bankopp.com (collectively "West") did not appeal from this temporary injunction.

[3] The State made this assertion, which West did not dispute, at the supplemental temporary injunction hearing.

4

other financial institution and/or account into which Defendants have placed or caused to be placed, funds from consumers to participate in Defendants' "bank opportunity."

The order also set the case for trial.

West appeals only from the district court's October 25 supplemental temporary injunction order that froze the assets in the Hibernia bank account. It asserts that the district court abused its discretion by entering the supplemental temporary injunction because the State did not demonstrate (1) a probable right to recovery or (2) a probable injury, and (3) the order did not specifically state the reasons for its issuance. We consider each of these assertions.

## DISCUSSION

**Standard of review**

The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). Because the decision to grant or deny a temporary injunction lies within the sound discretion of the trial court, we will not disturb that decision absent a clear abuse of discretion. *Id.* at 204. We view the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor. *Brammer v. K.B. Home Lone Star, L.P.*, 114 S.W.3d 101, 105-06 (Tex. App.—Austin 2003, no pet.). This Court may not substitute its judgment for that of the trial court unless its action was so arbitrary that it exceeded the bounds of reasonable discretion. *Butnaru*, 84 S.W.3d at 204. The trial court does not abuse its discretion if some evidence reasonably supports its decision. *Id.* at 211.

5

**Probable right to recovery**

In its first issue, West argues that the district court erred in granting the temporary injunction because the State did not demonstrate a probable right to recovery. West asserts that the transaction at issue is a loan of money, which is neither a "good" nor a "service" under the DTPA. *See Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174 (Tex. 1980); *see also* Tex. Bus. & Com. Code Ann. § 17.45(1), (2) (West 2002). West argues that the DTPA applies to transactions in which the borrower's objective is to purchase or lease goods or services, but the DTPA is inapplicable if a borrower's objective is merely an attempt to acquire money. *See La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566-67 (Tex. 1984); *Megason v. Red River Employees Fed. Credit Union*, 868 S.W.2d 871, 872 (Tex. Civ. App.—Texarkana 1993, no writ).

The State responds that West's "banking opportunity" is not a "loan" because it specifies that repayment is unnecessary. *Cf.* Tex. Fin. Code Ann. § 301.002(a)(10) (West Supp. 2005) (defining "loan" as "an advance of money that is made to or on behalf of an obligor, the principal amount of which the obligor has an obligation to pay the creditor"). Alternatively, the State argues that West is offering a loan forgiveness service.

The district court's finding of a probable right to recovery under the DTPA is supported by the evidence that West's Web site, offers a service—specifically, the elimination of debt—in exchange for $5,000. According to the site, after the money was submitted, "the bank [would] analyze each project member's debt and provide feedback if there are concerns." The site also informed the public that, after wiring $5,000, participants would receive a document

6

"guarantee[ing] that the loan that [they] are signing will be forgiven and that [they] will not have to pay it back!"

"Services" are defined in the DTPA as "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods." Tex. Bus. & Com. Code Ann. § 17.45 (2). The State's suit complains that West's service violates the DTPA because it (1) fails to disclose the factual basis for its representations that David West has found a bank willing to give individuals "loans" to pay their debts without expectation of repayment and (2) encourages consumers to wire $5,000 to an account that is not identified as belonging to David West.

The debt elimination opportunity that West offered is similar to the function of a "credit services organization," defined in the finance code as

> a person who provides, or represents that the person can or will provide, for the payment of valuable consideration, any of the following services with respect to the extension of consumer credit by others:
>
> (A) improving a consumer's credit history or rating;
>
> (B) obtaining an extension of consumer credit for a consumer; or
>
> (C) providing advice or assistance to a consumer with regard to Paragraph (A) or (B).

Tex. Fin. Code Ann. § 393.001 (West 1998). A credit services organization is prohibited from making false or misleading representations in the offer or sale of its services, including any unfounded guarantees to "erase bad credit" or to obtain an extension of consumer credit "regardless of credit history." *Id*. § 393.304 (West 1998). A violation of chapter 393 is actionable under the DTPA. *Id*. § 393.504 (West 1998).

7

One company was held to have been a credit services organization based on its:

- television commercials "targeting consumers with debt problems and urging them to contact [the company] for relief from these woes;"

- printed materials informing a debtor that it could assist in obtaining and repairing credit; and

- Web site, which stated that the company could provide advice or assistance to "empower debtors [to] make an informed decision on how to manage, service or liquidate their debts."

*In re Zuniga*, No. 05-33416-H4-7, 2005 Bankr. LEXIS 2037, at *56-58 (Bankr. S.D. Tex. Sept. 22, 2005) (applying Texas law). These activities parallel West's "banking opportunity"—advertised on the radio, in a telephone message, and on the Web—offering debt elimination, for $5,000 as specified on the Web site, to any "U.S. Citizen" for any type of debt through a "loan" that would not require repayment. The service West promoted on its Web site included financial analysis, by which "the bank [would] analyze each project member's debt and provide feedback if there are concerns."

We conclude that the district court did not abuse its discretion in determining that the State demonstrated a probable right to recovery under the DTPA. We overrule West's first issue.

**Probable injury**

In its second issue, West argues that the district court erred in granting the temporary injunction because the State did not demonstrate a probable injury prior to final trial on the merits. *Butnaru*, 84 S.W.3d at 204. Probable injury includes elements of imminent harm, irreparable harm, and lack of an adequate remedy at law. *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570,

577 (Tex. App.—Austin 2000, no pet.) (citing *Surko Enters., Inc. v. Borg-Warner Acceptance Corp.*, 782 S.W.2d 223, 225 (Tex. App.—Houston [1st Dist.] 1989, no writ)).

West argues that the State did not produce any competent evidence that money in the Hibernia bank account in Louisiana belonged to any Texas consumer or that West would dissipate the funds from the account. The State contends that the common law requirements for a temporary injunction—including balancing of the equities, proof of irreparable harm or injury, and lack of an adequate remedy at law—are inapplicable when the State is seeking statutorily-authorized injunctive relief. *See* Tex. Bus. & Com. Code Ann. § 17.47(a). Section 17.47 of the DTPA states that

> whenever the consumer protection division has reason to believe that any person is engaging in, has engaged in, or is about to engage in any act or practice declared to be unlawful by this subchapter, and that proceedings would be in the public interest, the division may bring an action in the name of the state against the person to restrain by temporary restraining order, temporary injunction, or permanent injunction the use of such method, act, or practice.

*Id*. The Texas Supreme Court has ruled that "when it is determined that [a] statute is being violated, it is within the province of the district court to restrain it." *State v. Texas Pet Foods*, *Inc.*, 591 S.W.2d 800, 805 (Tex. 1979) (affirming award of permanent injunctive relief based on threatened violation of environmental statutes). The court observed that the doctrine of balancing the equities had no application to statutorily-authorized injunctive relief. *Id.*

Texas courts have likewise held that when an applicant relies upon a statutory source for injunctive relief, such as the DTPA, the statute's express language supersedes the common law injunctive relief elements such as imminent harm or irreparable injury and lack of an adequate remedy at law. *See*, *e.g.*, *Shields v. State*, 27 S.W.3d 267, 273 (Tex. App.—Austin 2000, no pet.)

9

(State need not prove likelihood of future violations because injunctive relief available under Securities Act for past acts alone); *Mortgagebanc & Trust, Inc. v. State*, 718 S.W.2d 865, 869 (Tex. App.—Austin 1986, no writ) (express statutory language of Securities Act authorizing injunction supersedes equitable requirements generally applicable to common law injunctive relief); *Rio Grande Oil Co. v. State*, 539 S.W.2d 917, 921 (Tex. Civ. App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.) (State need only meet statutory provisions of Securities Act and is not required to otherwise show probable injury); *Gulf Holding Corp. v. Brazoria County*, 497 S.W.2d 614, 619 (Tex. Civ. App.—Houston [14th Dist] 1973, writ ref'd n.r.e.) (State need not prove irreparable injury to be entitled to injunction under Open Beach Act); *see also Household Retail Servs., Inc. v. State*, No. 04-00-00734-CV, 2001 Tex. App. LEXIS 5893, at *9 (Tex. App.—San Antonio Aug. 29, 2001, no pet.) (holding that when legislature authorized attorney general to seek injunctions on behalf of multiple consumers, it determined that past or threatened DTPA violation coupled with public need constituted sufficient "irreparable risk of harm" to support entry of injunction).

Accordingly, the State argues that, to be entitled to a temporary injunction under the DTPA, it need only demonstrate to the court its reason to believe that (1) any person is engaging in, has engaged in, or is about to engage in any act or practice declared to be unlawful by the DTPA, and (2) that proceedings would be in the public interest. *See* Tex. Bus. & Com. Code Ann. § 17.47(a). The fact that a person has ceased its unlawful conduct will not affect the State's entitlement to injunctive relief. *Id.* Furthermore, the DTPA authorizes the court to "make such additional orders or judgments as are necessary to compensate identifiable persons for actual damages or to restore money or property, real or personal, which *may have been* acquired by means of any unlawful act or practice." *Id.* § 17.47(d) (emphasis added).

10

At the October 25 hearing on the supplemental temporary injunction, the State introduced evidence of West's "www.bankopp.com" Web site, promoting a "banking opportunity" that would allow any "U.S. Citizen" to pay off all personal debt—including "credit cards, mortgages, student loans, vehicles, loans, IRS settlements, and back child support"—before December 31, 2005, by securing a "loan" from an unnamed bank. The site contained repeated assertions that participants will not repay the bank because the "loans" will be forgiven. It claimed that "two little known banking practices . . . Fractional Banking and Forgiven Loans" made this "one shot opportunity" possible. The site also claimed that although "this opportunity is legal," the "Federal Reserve will undoubtedly close the loopholes that allowed the project to take place this once. While the system intended on well connected, wealthy individuals to be able to take advantage of this, it was never intended that regular every day people would gain access to it." The site also asked participants to deposit a wire transfer of $5,000—as a signal of their "commitment to be involved with the project"—to a bank account in Panama, or to an account with Hibernia National Bank in Baton Rouge.

The State also introduced into evidence documents that the Hibernia National Bank in Baton Rouge, Louisiana provided in response to the State's civil investigative demand. The documents included a commercial new account information card for Del Sur International Holdings and its "sole proprietorship resolution certificate," along with a copy of a Louisiana driver's license issued to David Jason West. These documents show that David West opened a free small business checking account with $100 cash at Hibernia on August 8, 2005, under the business name of Del Sur International Holdings. He is the sole owner and signatory on the account. The account number assigned to the Del Sur International Holdings checking account matches the account number on the

Web site to which the participants' $5,000 wire transfers had been directed. The Web site does not disclose that the $5,000 transfers of participants' "commitment money" were deposited into an account owned by David West.

Based on this evidence, the district court determined that West "may be violating the DTPA" and that the State's action "was in the public interest." Indulging every reasonable inference in favor of the court's order as we must, we conclude that there is sufficient evidence to support the court's findings in accordance with section 17.47(a). Thus, we overrule West's second issue.

**Specificity of order under rule 683**

In its third issue, West claims that the district court's temporary injunction violated rule 683 because it did not state the reasons for its order with specificity. *See* Tex. R. Civ. P. 683. West argues that the district court's order does not specifically state the reasons why injury will be suffered if the interlocutory relief is not ordered. West also faults the order for its failure to state why the identified probable injury is an irreparable one for which the State has no adequate legal remedy. Under Rule 683

> [e]very order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

> Every order granting a temporary injunction shall include an order setting the cause for trial on the merits with respect to the ultimate relief sought. The appeal of a temporary injunction shall constitute no cause for delay of the trial.

Tex. R. Civ. P. 683.

The State responds that West waived its complaint about the specificity of the court's order by failing to object when the court inquired about its agreement to the form of the order. Because we conclude that the order was sufficiently specific under rule 683, we need not address the waiver issue.[4]

---

[4] The record shows that, after an initial objection to the order, West denied any further objection to its form:

| THE COURT: | Do you want to take a moment to look at it? |
|---|---|
| [West's counsel]: | Thank you, Your Honor. (Pause). Your Honor, the proposed order states that given the exhibits and sworn affidavits attached thereto, that unless defendants are immediately restrained from the acts prohibited below, defendants will dissipate funds obtained from consumers through misrepresentation. Is that the court's ruling today? |
| THE COURT: | Well, we didn't have any sworn affidavits, I don't think, introduced into evidence, did we? |
| [State's counsel]: | No, Your Honor. |
| THE COURT: | Okay. I'll make that change. Any other objections to the form? |
| [West's counsel]: | No, Your Honor. |

The State acknowledges that Texas courts are split on whether failure to object to a temporary injunction order results in waiver on appeal or a fatally defective order. *Compare* Tex. R. App. P. 33(a)(1); *Texas Tech Univ. Health Scis. Ctr. v. Rao*, 105 S.W.3d 763, 768 (Tex. App.—Amarillo 2003, pet. dism'd) (finding waiver of complaint about order's lack of specificity); *Shields v. State*, 27 S.W.3d 267, 273 (Tex. App.—Austin 2000, no pet.) (same); *Emerson v. Fires Out, Inc.*, 735 S.W.2d 492, 493-94 (Tex. App.—Austin 1987, no writ) (same); *with* Tex. R. App. P. 683; *Monsanto Co. v. Davis*, 25 S.W.3d 773, 789 (Tex. App.—Waco 2000, pet. dism'd w.o.j.) (voiding order for failure to explain reasons for its issuance); *University Interscholastic League v. Torres*, 616 S.W.2d

Relying on rule 693, the State responds that "the principles, practice and procedure governing courts of equity shall govern proceedings in injunctions when the same are not in conflict with these rules *or the provisions of the statutes*. Tex. R. Civ. P. 693 (emphasis added); *see also Texas Pet Foods*, *Inc.*, 591 S.W.2d at 805 ("When it is determined that the statute is being violated, it is within the province of the district court to restrain it. . . . [t]he doctrine of balancing the equities has no application to this statutorily authorized injunctive relief.").

The State reiterates that section 17.47(a) of the DTPA authorizes the State's consumer protection division to bring an action for injunctive relief when "it has reason to believe that any person is engaging in, has engaged in, or is about to engage in any act or practice declared to be unlawful by [the DTPA], and that proceedings would be in the public interest." Tex. Bus. & Com. Code Ann. § 17.47(a). The DTPA also authorizes the court to "make such additional orders or judgments as are necessary to compensate identifiable persons for actual damages or to restore money or property, real or personal, which may have been acquired by means of any unlawful act or practice." *Id*. § 17.47(d). The State contends that the order is proper because it contains the essential findings that "Defendants may be violating § 17.47(a) and (b) of the Texas Deceptive Trade Practices-Consumer Protection Act," and that "this action is in the public interest."

The court found that the freeze was necessary to prevent West from dissipating funds in the account to which the participants' wire transfers had been directed:

---

355, 358 (Tex. Civ. App.—San Antonio 1981, no writ) (same); *Smith v. Hamby*, 609 S.W.2d 866, 868 (Tex. Civ. App.—Fort Worth 1980, no writ) (same). We need not address that issue here, however.

> [U]nless Defendants are immediately restrained from the acts prohibited below, Defendants will dissipate funds obtained from consumers through misrepresentations in violation of the Deceptive Trade Practices Act, before a full trial can be held on the merits of the State's claims. To the extent required by law, Plaintiff [State] has proved that continued violation of these laws will continue to cause Plaintiff and the general public to suffer irreparable harm.

We conclude that this order complied with the statutory prerequisites under section 17.47(a) of the DTPA by finding that "Defendants may be violating § 17.47(a) and (b) of the Texas Deceptive Trade Practices-Consumer Protection Act," and that "this action is in the public interest." The order also satisfied the specificity requirement of rule 683 by finding that, "unless Defendants are immediately restrained from the acts prohibited below, Defendants will dissipate funds obtained from consumers through misrepresentations in violation of the Deceptive Trade Practices Act, before a full trial can be held on the merits of the State's claims." Accordingly, we overrule West's third issue.

## CONCLUSION

Based on the record before us, West has not shown that the district court acted outside the bounds of its reasonable discretion by granting the supplemental temporary injunction. Accordingly, we affirm the court's order.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Puryear and Pemberton

Affirmed

Filed: July 21, 2006

15