The STATE of Texas, Appellant

v.

David G. VAVRO, Appellee.

No. 05–07–00341–CV.

Court of Appeals of Texas,
Dallas.

July 7, 2008.

der Election Code section 63.007.  Tex. Elec.   Code Ann. § 63.007 (Vernon 2003).

Andrew D. Leonie, Asst. Atty. Gen., Dallas, Greg Abbott, Atty. Gen., Jeffrey L. Rose, Paul D. Carmona, David M. Ashton, Asst. Atty. Gen., Austin, for Appellant.

John E. Collins, Burleson, Pate & Gibson, L.L.P., Dallas, Jerry L. McDonald, Jr., Raton, Jerry L. McDonald, Sr., Bedford, for Appellee.

Before Justices MORRIS, WHITTINGTON, and O'NEILL.

## OPINION

Opinion by Justice WHITTINGTON.

In a single issue, the State of Texas contends the trial judge erred in granting appellee David G. Vavro's motion for judgment notwithstanding the jury's verdict. We affirm the trial court's judgment.

### Background

In February 2003, the Attorney General through the Consumer Protection Division brought suit pursuant to section 17.47 of the Texas Deceptive Trade Practices–Consumer Protection Act, TEX. BUS. & COM. CODE ANN. § 17.47 (Vernon Supp.2007) (attorney general may bring action in name of state against any person he believes is engaged in unlawful practices under DTPA), against parties he alleged were responsible for a business known as Sun Country Travel. In the original petition, the State alleged the individuals Jerry L. McDonald, Sr. and Jerry L. McDonald, Jr., and the entities Vavro, McDonald & Associates, L.L.C. a/k/a Vavro, McDonald, Kennedy & Associates, L.L.C., and Texas Travel Partners, L.L.C. d/b/a Sun Country Travel, employed false, misleading, or deceptive trade practices in the sale and marketing of discount travel club memberships. David G. Vavro individually was not a party to this suit until March 8, 2005, when the State filed its First Amended Original Petition. At trial, the jury found Vavro engaged in false, misleading and deceptive acts or practices, and made findings of amounts to be assessed against Vavro for those acts, as well as attorney's fees.[1] In the jury charge, the trial judge applied a two year statute of limitations

---

1. The jury made similar findings against Vavro, McDonald & Associates, L.L.C., Jerry L. McDonald, Sr., and Jerry L. McDonald, Jr., who are not parties to this appeal.

and limited the jury's consideration of Vavro's actions to those occurring after March 8, 2003. Vavro filed a motion for judgment notwithstanding the verdict, alleging the State failed to establish his individual liability for the damages and penalties awarded by the jury. The trial judge granted Vavro's motion on December 19, 2006 and signed a judgment against the other defendants the following day. The State filed a motion to vacate the judgment notwithstanding the verdict or, in the alternative, for new trial as to Vavro. The trial judge denied this motion, and the State now appeals.

### Standard of Review

■■■ We affirm a trial judge's decision to grant a judgment notwithstanding the jury's verdict if the evidence is legally insufficient to support one or more of the jury findings on issues necessary to liability. *Wal–Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex.2003) (per curiam). Evidence is legally insufficient where (1) there is a complete lack of evidence of a vital fact; (2) the factfinder is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Lochinvar Corp. v. Meyers*, 930 S.W.2d 182, 188 (Tex.App.-Dallas 1996, no writ). In a legal sufficiency review, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We review the evidence and must credit the favorable evidence if reasonable jurors could and disregard the contrary evidence unless reasonable jurors could not. *City of Keller*, 168 S.W.3d at 827; *see also Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001) (when party attacks

legal sufficiency of adverse finding on issue on which it has burden of proof, party must demonstrate on appeal that evidence establishes, as matter of law, all vital facts in support of issue).

### Scope of Review

■■■ Initially, we address Vavro's argument that our sufficiency review is limited to acts occurring after March 8, 2003, the time period set out in the jury charge.

The State objected at trial that the instruction in the jury charge regarding the statute of limitations was an improper comment on the weight of the evidence and did not track the language of the applicable statute. The trial judge overruled these objections. In its appellate brief, the State does not complain of the trial judge's application of the statute of limitations in the jury charge. Rather, the State argues there was evidence to support the jury's answers to the questions as presented in the jury charge ("Issue Presented: The trial court erred in granting David G. Vavro's Motion for a Judgment Notwithstanding the Verdict because evidence in the record supports the jury's verdict."). After arguing the limitations issue in the trial court, the State was aware of the complaint and apparently decided to frame its appeal so that the jury's verdict could be restored, rather than asserting error in the charge requiring a remand.

■■■ Vavro, however, addresses the issue in his appellee's brief, arguing the trial judge properly applied the two-year statute of limitations to the claims asserted by the State against him individually. In its reply brief, the State responds to this argument. A reply brief may not be used to raise new issues. *Dallas County v. Gonzales*, 183 S.W.3d 94, 104 (Tex.App.-Dallas 2006, pet. denied) (Texas Rules of Appel-

late Procedure did not allow appellant to raise limitations issue in reply brief in response to appellee's brief, where issue was raised in trial court but not in appellant's original brief); *Howell v. Texas Workers' Comp. Comm'n,* 143 S.W.3d 416, 439 (Tex.App.-Austin 2004, pet. denied) (rules of appellate procedure do not allow appellant to include in a reply brief a new issue in response to some matter pointed out in appellee's brief but not raised by appellant's original brief.) Because the State did not allege in its appellant's brief that the trial judge erred in applying the two-year statute of limitations, we do not consider this issue on appeal.

■ For the questions inquiring about Vavro's liability, the jury was instructed as follows: "In answering questions 10 through 18, inclusive, you may consider only the conduct of David G. Vavro for his actions, if any, occurring after March 8, 2003." An assessment of the sufficiency of the evidence must be measured by the jury charge when there has been no objection to it. *Romero v. KPH Consol., Inc.,* 166 S.W.3d 212, 221 (Tex.2005) (citing *Wal–Mart Stores, Inc. v. Sturges,* 52 S.W.3d 711, 715 (Tex.2001), for proposition that assessment of evidence must be made in light of jury charge district court gave without objection). Although the State objected below, it did not raise this issue on appeal. Thus, we review the sufficiency of the evidence in light of this instruction.

### Sufficiency of the Evidence

■ In its answers to Question 10, the jury found Vavro engaged in nine types of false, misleading, or deceptive acts or practices in the conduct of trade or commerce. In Question 11, the jury found the deceptive acts by Vavro were calculated to acquire or deprive money from consumers who were 65 years of age or older. In Question 12, the jury found Vavro engaged

in the deceptive acts on 1044 occasions. In Question 13, the jury assessed a civil penalty against Vavro of $3,000,000. In Question 14, the jury found the sum of $406,396 was necessary to restore money taken from identifiable persons by means of Vavro's unlawful acts or practices. In Question 20, the jury was asked about the State's reasonable and necessary attorney's fees to be assessed against Vavro, and the jury responded with amounts for trial and appeals.

The State relies on one trial exhibit and the testimony of Vavro's son, David W. Vavro, to support the jury's findings regarding Vavro's "actions ... occurring after March 8, 2003." Exhibit 2 was prepared by Richard Thompson, the controller for Vavro, McDonald & Associates, L.L.C. Thompson testified he prepared Exhibit 2 "to show the decline in sales" beginning in 2003. The exhibit shows dollar amounts of sales by week for each office of Sun Country Travel between January and April 2003. Specifically, Exhibit 2 reflects sales volume for the weeks ending March 9, 2003 through April 13, 2003, within the time period the jury was asked to consider in weighing Vavro's conduct. Exhibit 2 provides no further detail regarding what was sold, to whom sales were made, the amount or date of any particular sale, or what representations were made to any consumer or group of consumers in connection with the sales. For the proposition that "sales presentations continued, and travel club memberships were sold on a daily basis through April of 2003," the State cites the following testimony of Vavro's son, given at a deposition and then read to the jury at trial:

Q: What happened with the L.L.C.? Was it dissolved? Was it sold?

A: It wasn't sold. It stopped operating.

Q: That was April or May of 2003?

A: When it stopped operating?

Q: Yes.

A: Sales stopped?

Q: Right.

A: If I had to specify, I would say between the end of February and June. I'm not really sure, but I'm thinking April or May.

Q: Were the other offices closed down at that point?

A: Yes.[2]

The State argues it established all sales by Sun Country Travel were fraudulent. Thus, the jury could infer the sales that took place after March 8, 2003 were fraudulent. The State further argues Vavro ratified Sun Country's deceptive conduct by retaining the benefits of its illegal transactions. The State concludes there was more than a scintilla of evidence to support the jury's findings that Vavro engaged in false, misleading, and deceptive trade practices after March 8, 2003.

We agree with the State that there was evidence from which the jury could have concluded Vavro was actively involved in Sun Country's business. Although Vavro's own testimony minimized his role in the business to that of an out-of-town investor, the testimony of other witnesses and a variety of exhibits showed his participation in many aspects of the business, including regular attendance at board meetings and regular review of Sun Country's finances, even when he lived out of state. Further, Vavro admitted he was active in setting up the business in the latter half of 2000, and in March or April of 2003, he moved back to Dallas from Arizona and "just took over

everything" regarding the business. There was also evidence that, after March 8, 2003, on Vavro's instruction, Sun Country's bank account was closed, and Sun Country funds collected thereafter were deposited in the account of Horizon Travel, a business owned by Vavro.

We also agree with the State there was evidence from which the jury could have concluded Sun Country violated consumer protection statutes as alleged in the State's petition. Through the testimony of consumers who purchased travel club memberships from Sun Country, the State established false representations were made regarding the sponsorship of the memberships sold, the promotional gifts to be awarded, and the benefits of a membership. While consumers understood they were making a purchase from Sun Country, the actual fulfillment of the promised travel services was to be accomplished by other companies. Consumers testified regarding the difficulties they encountered in attempting to use the travel club memberships and cancel their memberships and obtain refunds. The State also established that Sun Country paid only $150 or $200 to obtain the memberships it sold to consumers at an average price of $3000 to $4000. There was evidence telemarketers hired by Sun Country contacted persons on the "Do Not Call" list and evidence that some of Sun Country's marketing was calculated to acquire money from persons 65 years of age or older. *See* TEX. BUS. & COM.CODE ANN. § 17.46(b) (Vernon Supp.2007) (section of Texas Deceptive Trade Practices–Consumer Protection Act listing false, misleading, or deceptive acts or practices);

**2.** The State also cites to the deposition testimony of Carolyn Thompson, also read to the jury at trial, to establish "Sun Country continued to market and sell travel club memberships until the end of April 2003," but the record reference cited shows only that Axis

Financial made collections on Sun Country accounts after April, 2003, not that any memberships were marketed or sold. Vavro testified he signed an account receivable purchase agreement with Axis Financial Service on behalf of Sun Country on September 30, 2002.

TEX. BUS. & COM.CODE ANN. §§ 40.001–.122 (Vernon 2002) (Texas Contest and Gift Giveaway Act); TEX. BUS. & COM.CODE ANN. § 44.001–.253 (Vernon Supp.2007) (Texas Telemarketing Disclosure and Privacy Act; also includes provisions regarding Texas No-call lists); TEX. BUS. & COM.CODE ANN. § 17.47(c)(2) (Vernon Supp.2007) (civil penalty may be awarded if act or practice was calculated to acquire or deprive money or property from consumer 65 years of age or older when act or practice occurred).

However, we agree with Vavro that there is no evidence he engaged in false, misleading, or deceptive acts or practices after March 8, 2003. Even assuming Vavro is liable for any action of Sun Country Travel, as the State contends, it was the State's burden to establish that Sun Country engaged in false, misleading, or deceptive acts or practices after March 8, 2003. *See, e.g., West v. State,* 212 S.W.3d 513, 519–20 (Tex.App.-Austin 2006, no pet.) (discussing State's burden of proof to obtain injunctive relief under DTPA section 17.47). The State essentially argues that, because there is no evidence Sun Country's deceptive practices ceased after March 8, 2003, there is sufficient evidence that the deceptive practices continued after March 8, 2003 and that Vavro was liable.

Vavro admits he took over the business after March 8, 2003. The State did not offer any evidence, however, of any transactions with consumers after March 8, 2003, in which the deceptive practices used in earlier sales were employed. All of the consumers who testified at trial made their purchases prior to March 8, 2003. Further, there was no evidence the funds collected after March 8, 2003, were the result of deceptive trade practices; the State relies on testimony that funds were collected and deposited, but offers no evidence regarding the particular consumer transac-tions underlying those collections. Exhibit 2 and the testimony of Vavro's son do not provide more than a scintilla of evidence of a vital fact, that Vavro engaged in deceptive practices in the sale of travel club memberships after March 8, 2003. Exhibit 2 shows "weekly sales volume," but there is no evidence regarding what was sold, to whom, by whom, on what date, for what price, or what representations were made in the course of the sales. The testimony of Vavro's son is that to the best of his knowledge, Sun Country stopped operating in April or May of 2003. There is nothing in this testimony about marketing efforts, sales, or other deceptive acts that took place in the relevant time period.

The State also argues Vavro is liable for the acts of Vavro, McDonald & Associates, L.L.C., of which Vavro was a principal. In separate questions, the jury found Vavro, McDonald & Associates, L.L.C. engaged in a variety of deceptive acts and practices. The jury charge included instructions regarding authority, apparent authority, and ratification, and also included the following instruction:

> Individuals may be held liable for the acts of a corporation, if the evidence shows that the individual defendants participated directly in the practices or acts or had authority to control them. Also, the evidence must show that the individuals had some knowledge of the practices. Authority to control the company can be evidenced by active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer.

The State argues Vavro can be held liable for the acts of the corporation because he participated directly in the acts, had knowledge of them, had the authority to control them, and ratified them by accepting the benefits. Again, we agree with the State that there was evidence from which

the jury could find Vavro was actively involved in the business affairs of the corporation and had authority to control its acts. But all of the evidence of the deceptive acts of the corporation pre-dates March 8, 2003. We overrule the State's issue.

Because the evidence was legally insufficient to support one or more of the jury's findings on issues necessary to Vavro's liability, we affirm the trial judge's decision to grant a judgment notwithstanding the jury's verdict. *See Wal–Mart Stores, Inc.,* 102 S.W.3d at 709.