*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*





★ ★ ★ ★ ★ ★ ★

# MEMORANDUM OPINION

No. 04-11-00109-CV

The **STATE** of Texas,
Appellant

v.

**ELITE MED, L.L.C.**, Brian Bailey, Individually, and S&B Marketing, Inc.,
Appellees

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-CI-21368
Honorable Barbara Hanson Nellermoe, Judge Presiding

Opinion by: Rebecca Simmons, Justice

Sitting: Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Rebecca Simmons, Justice

Delivered and Filed: August 17, 2011

AFFIRMED

The State of Texas appeals the trial court's order denying its application for a temporary

injunction against appellees Elite Med, L.L.C., Brian Bailey, individually, and S&B Marketing,

Inc. The State sought to enjoin Appellees from, *inter alia*, allegedly reimporting misbranded

arthritis treatment injections in violation of state and federal consumer protection laws. On

appeal, the State raises a single issue: the trial court abused its discretion when it refused to admit

certain portions of the State's investigative reports under the Public Records and Reports hearsay

exception, *see* TEX. R. EVID. 803(8), which exclusion caused the trial court to deny the State's application for a temporary injunction. We affirm the trial court's order.

## BACKGROUND

The Texas Department of State Health Services (DSHS) received an anonymous complaint that Appellees were illegally distributing prescription medical devices. DSHS investigated and concluded that Appellees were reimporting prescription medical devices into the United States that were not approved for use here and were distributing those devices without a license. At the temporary injunction hearing the parties vigorously disputed whether the Appellees were continuing to distribute the devices.

The Office of the Attorney General of Texas sued Appellees under the Texas Food, Drug, and Cosmetic Act, TEX. HEALTH & SAFETY CODE ANN. §§ 431.001–.415 (West 2010), and the Texas Deceptive Trade Practices-Consumer Protection Act (DTPA), TEX. BUS. & COM. CODE ANN. §§ 17.41–.63 (West 2011), seeking a temporary injunction. At the hearing, the State sought to admit DSHS investigative reports under the public records and reports hearsay exception. *See* TEX. R. EVID. 803(8). After sustaining multiple objections by Appellees to certain portions of the reports and witness testimony as inadmissible hearsay, the trial court denied the State's application. The State appeals the trial court's order denying its application for a temporary injunction.

## STANDARD OF REVIEW

A trial court exercises its discretion in admitting or excluding proffered evidence. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995) (citing *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989)). We review the trial court's exclusion of evidence under an abuse of discretion standard. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906

(Tex. 2000). We will affirm the ruling unless it "probably caused the rendition of an improper judgment." *Id.* Because the State claims that the exclusion of evidence resulted in the denial of the temporary injunction, we turn to the standard of review for the denial of a temporary injunction.

The grant or denial of a temporary injunction is an appealable interlocutory order. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (West 2008); *In re Tex. Natural Res. Conservation Comm'n*, 85 S.W.3d 201, 205 (Tex. 2002). The standard of review for an order granting or denying a temporary injunction is abuse of discretion. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Loye v. Travelhost, Inc.*, 156 S.W.3d 615, 618 (Tex. App.—Dallas 2004, no pet.). "The reviewing court must not substitute its judgment for the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion." *Butnaru*, 84 S.W.3d at 204; *Loye*, 156 S.W.3d at 618–19. "An abuse of discretion does not exist where the trial court bases its decisions on conflicting evidence." *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *Metra United Escalante, L.P. v. Lynd Co.*, 158 S.W.3d 535, 538 (Tex. App.—San Antonio 2004, no pet.). As we review the evidence, including conflicting evidence, we "must draw all legitimate inferences from the evidence in a manner most favorable to the trial court's judgment." *See Ireland v. Franklin*, 950 S.W.2d 155, 157 (Tex. App.—San Antonio 1997, no writ) (internal quotation marks and citation omitted); *accord Tex. Dep't of State Health Servs. v. Holmes*, 294 S.W.3d 328, 332 (Tex. App.—Austin 2009, pet. denied). In situations where "no findings of fact or conclusions of law were filed, the trial court judgment must be upheld on any legal theory supported by the record." *Davis*, 571 S.W.2d at 862 (footnote omitted); *accord Ireland*, 950 S.W.2d at 157.

**TEMPORARY INJUNCTION**

The State devotes much of its brief to analyzing the trial court's exclusion from evidence portions of reports created by DSHS investigators. However, a detailed discussion of the admissibility of the reports is not necessary because, even assuming *arguendo* that the excluded portions of the reports were not hearsay within hearsay and were admitted into evidence, the trial court's denial of the State's application for a temporary injunction was not improper. *See* TEX. R. APP. P. 44.1(a)(1) ("No judgment may be reversed on appeal [without a showing that] the error complained of probably caused the rendition of an improper judgment . . . ."); *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989) (obtaining a reversal or exclusion of evidence requires that the error "probably did cause rendition of an improper judgment"). For purposes of our analysis in this case we will assume all the evidence was admitted, including the excluded portions of the investigative reports, and determine whether the trial court's denial of the injunction was so arbitrary that it exceeded the bounds of reasonable discretion. *See Butnaru*, 84 S.W.3d at 204; *Loye*, 156 S.W.3d at 618–19.

## A. Applicable Law

### 1. Common Law and Statutory Temporary Injunctions

At common law, a trial court may grant a temporary injunction if the applicant "plead[s] and prove[s] three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Butnaru*, 84 S.W.3d at 204. Some statutes also enable the State to seek to enjoin a party. For example, under the Health and Safety Code,

> an authorized agent, or a health authority may petition the district court for a temporary restraining order to restrain a continuing violation of Subchapter B or a threat of a continuing violation of Subchapter B if the commissioner, authorized agent, or health authority finds that:

> (1) a person has violated, is violating, or is threatening to violate Subchapter B; and
>
> (2) the violation or threatened violation creates an immediate threat to the health and safety of the public.

TEX. HEALTH & SAFETY CODE ANN. § 431.047 (West 2010) (footnote omitted). When the State seeks a temporary injunction under the DTPA, "the statute's express language supersedes the common law injunctive relief elements such as imminent harm or irreparable injury." *West & Pydia, Inc. v. State*, 212 S.W.3d 513, 519 (Tex. App.—Austin 2006, no pet.); *see Household Retail Servs., Inc. v. State*, No. 04-00-00734-CV, 2001 WL 984779, at *3 (Tex. App.—San Antonio Aug. 29, 2001, no pet.) (not designated for publication) ("[A] past . . . violation of the DTPA coupled with a public need constitutes a sufficient irreparable risk of harm to support entry of an injunction.").

### 2. *Statutory Injunction under the DTPA*

Under the DTPA, the consumer protection division may bring an action against any person that has engaged in activities that are prohibited by the DTPA. *See* TEX. BUS. & COM. CODE ANN. § 17.47(a) (West 2011) ("[S]uch injunctive relief shall lie even if such person has ceased such unlawful conduct . . . ."); *West & Pydia*, 212 S.W.3d at 519. However, the statute's provisions for temporary injunctions are permissive: they permit, but do not require, a trial court to issue temporary injunctions. *See* TEX. BUS. & COM. CODE ANN. § 17.47(b) (West 2011) ("The court *may* issue . . . temporary or permanent injunctions to restrain and prevent violations of this subchapter . . . ." (emphasis added)); *see Butnaru*, 84 S.W.3d at 204 ("A temporary injunction is an extraordinary remedy and does not issue as a matter of right."). A court may deny the State's application if it decides that the injunction should not issue. *See Butnaru*, 84 S.W.3d at 204 ("Whether to grant or deny a temporary injunction is within the trial court's sound discretion."); *West & Pydia*, 212 S.W.3d at 516–17.

**B. The Evidence**

*1. Admitted Evidence*

At the beginning of the January 2011 hearing on the State's application for a temporary injunction, Appellees stated they would "not contest the general contention that [Appellees] . . . have been guilty of technical violations of the law in the past," but asserted that they had not violated any statute for over a year. The State asked the trial court to enjoin Appellees to keep them from "reimporting misbranded medical devices back in[to] the United States." The State called Karen Brkich, a store manager for a package shipping company as a witness. Brkich testified that Appellees had shipped numerous packages to persons in the United States from her store. She explained that the shipping clerk enters a description in a computer-based form for each package shipped based on the shipping party's description of the package contents. She noted that many of the package contents descriptions for Appellees' shipments indicated "medical supplies." The trial court admitted State's Exhibits 1 and 2 into evidence in their entireties. Exhibit 1 contains Shipment Details forms showing shipments from Appellees to doctors' offices, clinics, and the like, with the latest shipment date shown as December 23, 2009. Exhibit 2 includes Shipment Details forms for Appellees' shipments from another package shipping store; the latest shipping date for medical supplies is January 8, 2010.

On cross-examination, the State's witnesses did not recall any alleged unlicensed shipments after December 2009. Brkich said she had no recollection of any shipments by Appellees in calendar year 2010. Ron Waters, a DSHS investigator, testified that he had discovered no alleged violations in 2010. Further, Waters also admitted that he had no evidence that Appellees intended to presently violate the statutes. However, Thomas Brinck, a DSHS official, said that (1) Appellees' application for a license to distribute medical devices, (2) their

failure to inform DSHS of their business status, and (3) their failure to recall the misbranded devices contributed to Brinck's impression that Appellees were continuing to violate the statutes.

### 2. *Excluded Evidence*

The State offered ten exhibits into evidence: the court admitted seven in full, admitted Exhibits 7 and 9 in part, and excluded Exhibit 6.

Exhibit 6 is an Establishment Inspection Report of Elite Med and S&B Marketing prepared by Ron Waters, a DSHS investigator, in April 2009 with an addendum dated March 25, 2010. The report's sixteen page summary describes the results of Waters's investigation; the report's thirty-three exhibits include letters, e-mails, invoices, cancelled checks and documents given to Waters by third parties that tend to show that Appellees were continuing to distribute reimported devices as late as December 2009. In the summary, Waters notes Bailey told him Elite Med was discontinuing business as of April 2009, but Waters was not convinced.

Exhibit 7 is an Establishment Inspection Report of a Texas medical clinic prepared by Jonnetta Wheaton, also a DSHS investigator, on January 5, 2010. The trial court excluded the hearsay portions of Exhibit 7, which were the third party statements in the report summary and the third party documents included as exhibits to the report. The report's one page summary describes the clinic's purchasing clerk's statements that the clinic had purchased medical supplies from Elite Med at least a dozen times in 2008. The report's exhibits include the clinic's copies of Elite Med's invoices to the clinic for purchases of medical supplies; all the invoices were dated in calendar year 2008.

Exhibit 9 is an Establishment Inspection Report of a Texas doctor's office prepared by Wheaton on January 6, 2010. The trial court excluded the hearsay portions of Exhibit 9. The report's two page summary describes how Wheaton took possession of the medical supplies the

doctor's office had purchased from Elite Med. The report's exhibits include a list of the lot numbers of the medical supplies the office received from Elite Med, but there are no transaction dates associated with any of the lot numbers.

The excluded evidence, some of which the trial court described as "clearly hearsay," was merely cumulative of the admitted evidence on the key issue of the continuation of the illegal activity. The Shipment Details forms that were admitted into evidence showed shipments as late as January 8, 2010. The excluded hearsay evidence did not show any shipments after that date. None of the excluded evidence showed any sales activity after December 2009.

## C. Analysis

In its appeal, the State asserts the trial court abused its discretion by denying its application for a temporary injunction. The State correctly asserts that, under the DTPA, voluntary cessation of prohibited conduct does not prevent injunctive relief from being granted. *See* TEX. BUS. & COM. CODE ANN. § 17.47(a) (West 2011); *West & Pydia*, 212 S.W.3d at 519. The State also asserts that Appellees' statutory violations were continuing because Appellees had "fail[ed] to correct the misbranding violation" in that Appellees had not actively sought to retrieve the misbranded products from their distributees. *Cf. State v. Vavro*, 259 S.W.3d 377, 382 (Tex. App.—Dallas 2008, no pet.) (noting that the State was arguing that "because there [was] no evidence [an alleged violator's] deceptive practices ceased after [a certain date], there [was] sufficient evidence that the deceptive practices continued after [that date]"). Moreover, the State alleges that Appellees' pending application for a license to distribute medical devices in Texas indicated Appellees' intent to continue to violate the law.

The State also argues that the court based its decision only on the admitted evidence, and that had the court considered the excluded evidence it would have granted the injunction. The

State's argument is based on the court's oral comments made just before denying the State's application. The court noted that the State had "presented some compelling evidence," but the evidence was not enough for it to grant the temporary injunction. The trial court indicated it was "troubled by the 18-month delay to act and seek an injunction," and the "lack of nexus if [it] disregard[ed the] hearsay evidence." The court also noted that the State had not deposed Bailey or otherwise sought to provide more specific or more substantive evidence of Appellees' alleged wrongdoing.

The court's comments, however, must be disregarded because they do not constitute findings of fact and conclusions of law. *In re W.E.R.*, 669 S.W.2d 716, 716 (Tex. 1984) (per curiam); *In re Guardianship of Fortenberry*, 261 S.W.3d 904, 909–10 (Tex. App—Dallas 2008, no pet.). The State requested findings of fact and conclusions of law after the court entered its order, but the record does not show that the State filed a notice of past due findings of fact and conclusions of law when the court failed to file them. *See* TEX. R. CIV. P. 297. The State, therefore, waived its request, *see Las Vegas Pecan & Cattle Co. v. Zavala Cnty.*, 682 S.W.2d 254, 255 (Tex. 1984), and we disregard the court's oral statements in favor of its written order. *See Tex. Dep't of Pub. Safety v. Wilmoth*, 83 S.W.3d 929, 931 (Tex. App.—Amarillo 2002, no pet.) ("[O]ral pronouncements by the trial court which allegedly explain its decision cannot be substituted for those absent findings of fact and conclusions of law."). Thus, the trial court's comments do not support the State's arguments.

## D.  Reasonable Discretion

As we review the record, we must draw inferences from the evidence that support the trial court's written order. *See Ireland v. Franklin*, 950 S.W.2d 155, 157 (Tex. App.—San Antonio 1997, no writ); *see also Tex. Dep't of State Health Servs. v. Holmes*, 294 S.W.3d 328,

332 (Tex. App.—Austin 2009, no pet.); *CRC-Evans Pipeline Int'l, Inc. v. Myers*, 927 S.W.2d 259, 262 (Tex. App.—Houston [1st Dist.] 1996, no writ). Considering *arguendo* all the evidence, including, for purposes of this appeal, the proffered evidence which the trial court found to be inadmissible hearsay, the trial court acted within its reasonable discretion when it denied the State's application for a temporary injunction. *See Butnaru*, 84 S.W.3d at 204. Although there was some evidence that Appellees' prior conduct may have violated the DTPA, such prior conduct does not *require* the trial court to grant a temporary injunction. *See* TEX. BUS. & COM. CODE ANN. § 17.47(b) (West 2011) (enabling but not requiring a court to issue temporary injunctions). Similarly, the Health and Safety Code permits a district court to restrain even a threat of a continuing violation but only if the "threatened violation creates an immediate threat to the health and safety of the public." TEX. HEALTH & SAFETY CODE ANN. § 431.047 (West 2010). *See generally Tuma v. Kerr Cnty.*, 336 S.W.3d 277, 280 (Tex. App.—San Antonio 2010, no pet.) (dissolving a temporary injunction granted under the Health and Safety Code because, *inter alia*, the injunction failed to show how injury would result if it did not issue).

Considering all the evidence, including the excluded hearsay evidence, we hold that the trial court could have reasonably concluded that an injunction was not necessary to protect the public interest or that there was no immediate threat to the public's health and safety. Further, the trial court could have recognized that denying the State's application would not preclude the State from providing additional evidence of threats to the public's health and safety in a subsequent application. Therefore, we cannot say the trial court abused its discretion in denying the application. *See Ireland*, 950 S.W.2d at 157; *Holmes*, 294 S.W.3d at 332.

## CONCLUSION

Having reviewed the testimony and evidence in the record, and drawing inferences from the evidence that support the trial court's order, we cannot say that the trial court "exceeded the bounds of reasonable discretion." *See Butnaru*, 84 S.W.3d at 204; *Loye*, 156 S.W.3d at 618–19. Therefore, we affirm the trial court's order denying the State's application for a temporary injunction.

Rebecca Simmons, Justice